[No. 31039.   Department One.   March 3, 1950.]

JAMES N. BATEY, *Appellant,* v. ELVA L. BATEY *et al.,* *Respondents.*[1]

[1]Reported in 215 P. (2d) 694.

792

*Harry H. Johnston,* for appellant.

*Kelleher & Curran,* for respondent Elva L. Batey.

*Hyland, Elvidge & Alvord* and *Monroe Watt,* for respondents Emerson B. Thatcher *et al.*

DONWORTH, J.—This action was brought to recover specific sums of money alleged to be still owing to the plaintiff from the former guardian of his estate who had been discharged by order of the probate court under the circumstances described in the complaint. The four defendants to the action are: plaintiff's wife, Elva L. Batey, Emerson B. Thatcher, his former guardian, and Jane Thatcher, the guardian's wife, and the corporate surety on the former guardian's bond. Defendants demurred (Elva L. Batey interposing a separate demurrer) to the amended complaint and the trial court sustained the demurrers. Plaintiff having declined to plead further and having elected to stand on his amended complaint, the court entered a judgment of dismissal, from which the plaintiff has appealed.

The facts as alleged in the amended complaint, essential to an understanding of the legal questions here presented for determination, may be summarized as follows:

On July 18, 1946, appellant was adjudged insane and committed to the Western State Hospital where he remained

until July 31, 1948, when he was discharged as having recovered his sanity.

On June 19, 1947, upon petition of appellant's wife (respondent Elva L. Batey), respondent Emerson B. Thatcher was appointed guardian for appellant and duly qualified and continued to act as such until August 5, 1948, when his final report was approved and he was discharged. He was allowed by the court the sum of $150 as his compensation for acting as guardian. In the course of the guardianship there came into his possession, as guardian, the sum of $2,382.04, being the proceeds of the sale of the home owned by appellant and respondent Elva L. Batey as community property.

During the course of the guardianship, respondent Thatcher paid out, upon *ex parte* orders of the probate court, the following items: $198.88 in payment of a promissory note executed by respondent Elva L. Batey, which was her separate obligation; $300 to enable Mrs. Batey to pay expenses connected with the birth of an illegitimate child; and $112.50 which was paid to Mrs. Batey to enable her to satisfy a separate obligation. Appellant had no knowledge concerning the entry of these *ex parte* orders until the close of the guardianship, and no guardian *ad litem* was appointed to represent him in connection with the entry of the orders authorizing these disbursements.

At the time of his being committed to the hospital, appellant owned a truck, tractor, and other personal belongings situated on his home premises of the total value of $1,275, which the guardian negligently failed to inventory or to take into his possession and control. Upon appellant's release from the hospital, he made diligent search for this personal property and was unable to locate any of it.

The gist of the action is set forth in paragraph X of the amended complaint in these words:

"That immediately after his release from his confinement, plaintiff called upon the said defendant guardian to obtain what was due him from said guardianship, and was told that a report would be made in writing, and upon said report he would be paid what was coming to him from said guardianship estate. That shortly afterwards, late in the afternoon,

he was called to the office of his said guardian, who presented him with his report and hastened him on his way with him from his then residence in Kent, Washington, to the place of this court, conveying him there in said guardian's automobile, arriving at this court within a few minutes of closing time. That plaintiff was asked by said guardian to sign an approval of his final report and to consent to his release as such guardian, and plaintiff, on asking of him an explanation of the payments out of his estate, as shown by said report, was told by said guardian that all of the payments had been made by permission of the court, under its order, and that being so paid by order of the court, these payments were not to be questioned, and that if he wanted to get the moneys due him he would have to sign such approval and consent, and if he did not do so, he would not get what was coming to him. That plaintiff was without funds, and out of a job, and not knowing what to do, and relying on defendant guardian's statement that what had been paid out had been paid with the approval of the court and that he had no recourse, and being strongly urged to do so, did then and there sign such approval and consent.

"That immediately following his signing such approval and consent, an order discharging said guardian and his surety, the American Surety Company of New York, from liability, was presented to the court and was signed by the court. That at no time up to the granting of said order was plaintiff represented by any guardian ad litem to advise him, concerning what he should do in the matter, nor was he represented by any counsel other than the said guardian, or given any opportunity to employ counsel, and he was given no time or opportunity to consider what was shown by said report, and at the time he fully relied upon said guardian's representations to him that all the payments made out of the guardianship funds were made with the approval of this court by its orders theretofore made, and that said report was correct in all respects, and that there was nothing he could do about it, and that he would not be given the money due him unless he did then and there give his approval to said report and execute said consent.

"That on his discovery of the true state of facts, and that these representations of his guardian were misleading and untrue, as disclosed by what is alleged herein, he commenced this action."

The last paragraph of the amended complaint alleges that because of his negligence and wrongdoing the guardian was

not entitled to any compensation for his services and should be compelled to reimburse appellant accordingly.

The prayer is as follows:

"WHEREFORE, plaintiff prays of this Honorable Court that all the orders of this court, directing the payment of the said sums of $198.88, $300.00 and $112.50, be set aside, and that plaintiff have judgment against the defendants therefor. That plaintiff have judgment against the defendants for the sum of $1277.00, the value of the goods and chattels lost to plaintiff by their negligence, as alleged."

Assuming, as we must, that all facts alleged in the amended complaint are true and indulging in all reasonable inferences from those facts in favor of appellant, two legal questions are presented for our determination: (1) Does this action constitute a collateral attack on the order of the probate court approving the guardian's final account, and (2) if so, does the complaint allege facts sufficient to entitle appellant to collaterally attack this order?

In considering these questions, we must necessarily consider certain preliminary matters. Appellant strenuously argues that the three *ex parte* orders, authorizing the guardian to pay the three items of $198.88, $300, and $112.50, are void and should be so declared by this court for the reason that appellant was not represented by a guardian *ad litem* at the time these orders were severally entered by the probate court.

That these orders were not void, but are to be considered *prima facie* correct, subject to their being reviewed upon final settlement of the guardian's account, is made clear by our decision in *In re Deming*, 192 Wash. 190, 202, 73 P. (2d) 764, 771. We must assume that the disbursement of these three items by the guardian was approved by the probate court in the order approving the final account and may not now be questioned unless that order is subject to attack in this action.

The claim of appellant that the guardian was negligent in not taking into his possession and control the articles of personal property, alleged to be of the value of $1,275 under the circumstances alleged in the amended complaint, is also

a matter which could have been and should have been litigated at the time the probate court entered its order approving the guardian's final account and is likewise *res judicata* unless that order is subject to attack in this proceeding.

■ The order of the probate court approving the guardian's final account is a final judgment and is entitled to the same consideration as any final judgment entered by the superior court.

Our decisions to this effect are referred to in *Ryan v. Plath,* 18 Wn. (2d) 839, 140 P. (2d) 968, where this court said:

"Appellant recognizes the settled law in this state that orders and decrees of distribution made by superior courts in probate proceedings upon due notice provided by statute are final adjudications having the effect of judgments *in rem* and are conclusive and binding upon all persons having any interest in the estate and upon all the world as well. See the following recent decisions of this court upon this question, and the many prior decisions cited therein: *Farley v. Davis,* 10 Wn. (2d) 62, 116 P. (2d) 263; *Castanier v. Mottet,* 14 Wn. (2d) 615, 128 P. (2d) 974; *In re Christianson's Estate,* 16 Wn. (2d) 48, 132 P. (2d) 368."

It was pointed out in that case that there was an exception to the foregoing rule to the effect that such orders may be attacked on the ground of fraud even in a collateral proceeding. We will discuss this exception later in this opinion.

■ Appellant contends that the order approving the guardian's final account was void because he had no notice of the hearing on the final account and no guardian *ad litem* was appointed to represent him at that hearing. However, the allegations of the complaint show that appellant was furnished with a copy of the guardian's final account shortly before it was presented to the court and that he was personally present in court at the time that the final report was considered and approved by the court. At that time, appellant had been discharged from the Western State Hospital as having recovered his sanity and must be presumed to

have been legally competent to transact business; otherwise the court would not have terminated the guardianship.

Under these circumstances, it must be held that the probate court had jurisdiction to enter the order approving the guardian's final account and that this order constituted a final adjudication of all matters presented to the court as well as to all matters which should have been or could have been presented to the court for adjudication at that time. This order, not having been appealed from and not having been attacked within one year in the manner prescribed in Rem. Rev. Stat., § 464 [P.P.C. § 71-1], constitutes a final determination between the parties as to all the matters mentioned above.

Appellant cites *Larrabee Co. v. Mayhew*, 135 Wash. 214, 237 Pac. 308, in support of his argument that there can be no ratification of the acts of a guardian without full knowledge on the part of the ward. In that case the stepmother of two minors acquired their interest in their deceased father's estate (while acting as their guardian) through a statutory partition proceeding. The statute (Rem. Comp. Stat., § 873) contained this specific provision:

" . . . nor shall the guardian of an infant be an interested party in the purchase of any real property being the subject of the suit, except for the benefit of the infant. All sales contrary to the provisions of this section shall be void."

The acts of the guardian complained of in the cited case having been declared void by the statute applicable thereto, that decision cannot be considered as aiding appellant's position in this case. *Mood v. Mader*, 162 Wash. 83, 298 Pac. 329.

In the present action, appellant seeks to recover from the guardian and the surety on his bond the three identical items the expenditure of which by the guardian was approved by the order above mentioned. Appellant is also seeking to recover the value of the personal property ($1,275), which the guardian is alleged to have negligently failed to take into his custody. Appellant is further claiming that the guardian should be compelled to pay to him the sum of $150,

being the amount allowed by the probate court as compensation for his services as guardian.

■ A legal definition of collateral attack found in 34 C. J. 521, § 827, and approved in *Thompson v. Short,* 6 Wn. (2d) 71, 106 P. (2d) 720, and earlier cases, is:

"A collateral attack is an attempt to impeach the judgment by matters dehors the record, in an action other than that in which it was rendered; an attempt to avoid, defeat, or evade it, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it; any proceeding which is not instituted for the express purpose of annulling, correcting, or modifying such decree; an objection, incidentally raised in the course of the proceeding, which presents an issue collateral to the issues made by the pleadings. In other words, if the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important or even necessary to its success, then the attack upon the judgment is collateral."

Compare 49 C. J. S. 809, § 408.

The distinction between a direct attack and a collateral attack on a judgment is discussed in *In re Peterson's Estate,* 12 Wn. (2d) 686, 725, 123 P. (2d) 733, 751.

Considering the allegations of the amended complaint in the light of these decisions, in our opinion, this action constitutes a collateral attack upon the order of the probate court approving the guardian's final account.

This brings us to the second question, which is whether the allegations of the amended complaint are sufficient to justify such collateral attack.

■ The rule is generally stated that a final judgment of a court of competent jurisdiction is not subject to attack in another judicial proceeding except for fraud. This statement of the rule should be made more explicit by specifying the character of fraud which will justify a collateral attack on a final judgment. It is only where the fraud practiced by the successful party goes to the very jurisdiction of the court which rendered the judgment that the judgment is subject to collateral attack.

The distinction between the kind of fraud which will subject the judgment to collateral attack and fraud inhering in the proceeding itself which cannot be made the basis of a collateral attack is well expressed in 1 Freeman on Judgments (5th ed.) 661, § 331:

"The desired precision of statement is not always to be found in judicial observations respecting the effect of fraud upon judgments. Frequently, we meet with statements, advanced as principles of the law upon this subject, that judgments obtained by fraud are void, or that judgments rendered by a court having jurisdiction of the subject matter and the parties cannot be collaterally attacked except for fraud. Couched in those terms, the invalidating effect of fraud is open to misconception and altogether misleading conclusions are possible as to the rights of parties upon whom the fraud is practiced. It is doubtless true that fraud vitiates everything tainted by it, even to the most solemn determinations of courts of justice, but like every other subject of judicial inquiry, it must be investigated in the proper forum and by appropriate methods of procedure.

"The cases recognizing fraud or collusion as matter for impeachment of the judgment either concern attacks made thereon by creditors or third persons, a matter elsewhere considered, or else involve fraud of a character going to the very jurisdiction of the court preventing it from obtaining the requisite power to entertain or decide the issues in controversy. There can be no question as to the vitiating effect of fraud of this latter description or of what has been termed fraud upon the court. It invalidates the judgment because it precludes the acquisition of that power or jurisdiction without which, we shall see, a judicial determination is a mere nullity. Where therefore by reason of the fraud the apparent trial is in reality not one of adversary rights in a proper subject matter, the judgment would for that reason be impeachable collaterally. Thus where because of the fraud practiced the adverse party was not served with notice or process or was prevented from having a hearing, the judgment against him would ordinarily be a nullity. And hence a child may in an action for wrongful death show that a judgment pleaded in bar was obtained by fraud, in that the former suit was filed and judgment obtained without the knowledge of the plaintiff in the former suit or the parties in interest, and that no trial was had and that no one authorized to sue had any knowledge of the suit or the judgment.

"Quite different from such inceptional or jurisdictional fraud which destroys the judgment by reason of the fact that it defeats the jurisdiction upon which the judgment must rest is fraud inhering in the proceeding itself. This latter species of fraud is not ordinarily available as a ground for collateral attack, at least to the parties themselves or their privies. *A party to a judgment feeling himself aggrieved thereby may, in a proper case, either move that it be vacated, or prosecute an appeal* or writ of error, or maintain a suit in equity to enjoin its enforcement. These, *unless the judgment is void on its face,* are the only remedies open to him, and if he resorts to neither, or resorting to any or all he is denied relief, he cannot avoid the judgment, when offered in evidence against him, by proving that it ought not to have been pronounced, and was procured by fraud, mistake, perjury or collusion, or through some agreement entered into by the prevailing party, and which he neglected or refused to perform. A party against whom a fraudulent judgment has been rendered may not ignore the judgment, which is fair upon its face, for an indefinite period, and successfully defeat the process of the court whenever put in operation against him without any affirmative action on his part to have the judgment declared invalid. When interposed collaterally against a judgment emanating from a court having the requisite jurisdiction, fraud is entitled to no greater consideration than other matters which render the proceedings irregular, erroneous or voidable and will not support a successful attack, particularly where the party complaining of the fraud stipulated, as defendant in the former suit, that the judgment therein should stand." (Italics ours.)

The case of *In re Higdon,* 30 Wn. (2d) 546, 192 P. (2d) 744, was a *habeas corpus* proceeding instituted by an inmate in the Western State Hospital claiming that at the hearing resulting in her commitment she was not informed of her right to a jury trial on the question of her sanity or of her right to be represented by counsel. The original record in the superior court was silent as to these matters but this court held that the judgment was not void for this reason. In so holding we quoted with approval the following statement of the law found in 31 Am. Jur. 198, § 602:

"The mere fact that the jurisdiction of a court to render a particular judgment does not appear of record does not

render such judgment subject to a collateral attack. Indeed, the general rule is that a collateral attack may not be made upon a judgment where the absence of jurisdiction does not appear upon the record. Under this rule, the validity of a judgment when collaterally attacked must be tried by an inspection of the record alone, and no other or further evidence on the subject is admissible, even though such evidence might be sufficient to impeach the judgment in a direct proceeding against it."

Since the order of committal was not void, this court declared it to be immune from collateral attack.

Other decisions of this court bearing upon the subject of what constitutes a collateral attack on a prior judgment and discussing the circumstances under which such an attack is permissible are: *Peyton v. Peyton,* 28 Wash. 278, 68 Pac. 757; *Hanna v. Allen,* 153 Wash. 485, 279 Pac. 1098; *Globe Constr. Co. v. Yost,* 169 Wash. 319, 13 P. (2d) 433; *Thompson v. Short,* 6 Wn. (2d) 71, 106 P. (2d) 720.

The supreme court of Arizona had occasion to discuss the character of fraud which will support a collateral attack on a judgment in *Dockery v. Central Arizona Light & Power Co.,* 45 Ariz. 434, 45 P. (2d) 656. That decision contains a comprehensive treatise on this subject.

Since the order of the probate court was not void on its face, in view of our decisions bearing on this problem, and those of other courts which are referred to therein, we hold that the trial court was correct in sustaining the demurrer to the amended complaint interposed by the guardian and his wife and the surety on his official bond on the ground that the final order of the probate court in the guardianship proceeding was not subject to collateral attack in this action.

It is noted that the original complaint in this action was verified by appellant sixteen days after the entry of the final order in the guardianship proceeding. At that time, and for one year after its entry, the final order was subject to direct attack by petition to vacate or modify it under the provisions of Rem. Rev. Stat., §§ 464 and 465. One of the grounds provided therein for vacating or modifying such order is "For fraud practiced by the successful party in

obtaining the judgment or order." The trial court in its memorandum decision suggested this procedure was appropriate.

In *Muller v. Hendry*, 171 Wash. 9, 17 P. (2d) 602, we held that the remedy afforded by this statute is exclusive when the facts upon which the petition for vacation and modification of the order is based are discovered within the period of one year after its entry.

Respondent Elva L. Batey, wife of appellant, filed a separate demurrer challenging the sufficiency of the amended complaint on several grounds, including the grounds that appellant had no capacity to sue and that there was a defect of parties. This respondent filed a separate brief in this court in which her counsel argue that appellant may not maintain an action against his wife for the alleged conversion of some of the community funds to her own use, especially because it does not clearly appear that the action is brought for the benefit of the community.

The probate court in the guardianship proceeding had jurisdiction of the community property of appellant and respondent Elva L. Batey. The acts of the guardian in selling the home and paying out part of the proceeds thereof to this respondent having been approved in the order approving the guardian's final account, she is in the same legal position as the guardian and his surety with respect to collateral attack. Therefore, the court properly sustained the wife's demurrer on the ground that no cause of action was stated against her in the amended complaint. It is, therefore, not necessary to pass upon the question raised by respondent Elva L. Batey as to appellant's capacity to maintain an action of this nature against her. We therefore express no opinion upon this question.

The action of the trial court in sustaining both demurrers to the amended complaint being clearly correct, its order dismissing the action is hereby affirmed.

SIMPSON, C. J., SCHWELLENBACH, BEALS, and GRADY, JJ., concur.