[No. 34555. Department Two. August 21, 1958.]

THELMA V. ANDERSON, *Appellant,* v. MARCELLE V. ANDERSON, *as Administratrix, Respondent.*[1]

[1]Reported in 328 P. (2d) 888.

*Robert B. Abel,* for appellant.

*H. M. Tollefson* (*Frederick R. Hokanson,* of counsel), for respondent.

HILL, C. J.—The issue, sought to be raised, is the validity of a default divorce. We never reach the real issue because Thelma V. Anderson abandoned the route of direct attack upon the divorce decree to follow the dead-end roads of collateral attacks.

It appears that Albert B. Anderson and Thelma V. Anderson desired a divorce; that, together, they consulted an attorney who prepared, at their request, a property-settlement agreement and a divorce complaint with Mr. Anderson as the plaintiff. Mrs. Anderson accepted service of the summons and complaint the same day that the property settlement was signed, *i.e.,* September 21, 1955. (It should be noted that the attorney was not Mr. Anderson's attorney; that he had never seen either of the parties before they came into his office together; that he believed there were grounds for divorce; that he believed Mrs. Anderson to be entirely competent; that he recommended to her several times that she secure some other attorney to give her independent advice, and that she refused to do so. There is no reflection upon and no criticism of his handling of this matter.)

Mrs. Anderson made no appearance in the divorce action, but left the state of Washington and went to Massachusetts. She was later adjudged to be in default, and, after she had been adjudged to be in default, a divorce decree was entered February 28, 1956.

Mrs. Anderson moved to vacate the decree on September 21, 1956. She alleged (and her allegations must for present purposes be accepted as true) that she was mentally incompetent and of unsound mind from July, 1955, to June, 1956, all of which was known to her husband; that in Massachusetts she was admitted to the Boston state hospital.

". . . as an insane person, October 30, 1955, and was committed to said Hospital as an insane person December 14th, 1955, and was thereafter transfered to the Grafton State Hospital, near Boston, on December 16th, 1955.";

that on June 22, 1956, she was discharged as a well patient, and that upon her return to Tacoma she first learned that her husband had secured a divorce on February 28, 1956. She also alleges that she had a meritorious defense to the divorce action; that

". . . on the records of this case it appears that her husband has defrauded her; he having obtained title to community property of the value of *$15,000/00* and having given her the nominal sum of $500.00, . . ."

and that she was mentally incompetent at the time she signed the alleged property settlement, September 21, 1955.

An order was issued directing Mr. Anderson to show cause why the divorce decree should not be vacated. Mr. Anderson, who had married again, filed counter affidavits; but before there was any hearing on the order to show cause, he died. Thereupon, Marcelle V. Anderson was appointed administratrix of his estate, as his surviving spouse, and was substituted as a party. She moved for a dismissal of the show cause proceeding, and the court entered, on April 9, 1957, an order which reads in part:

"ORDERED that defendant's [Thelma V. Anderson's] show cause action to vacate and set aside the decree of divorce in the above entitled cause, having abated with the death of Albert B. Anderson, be and the same hereby is dismissed without prejudice."

There was no appeal from this order, and no attempt by any other proceeding to vacate the divorce decree, or any part thereof.

Our holdings in *Dwyer v. Nolan* (1905), 40 Wash. 459, 82 Pac. 746; and *Crockett v. Crockett* (1947), 27 Wn. (2d) 877, 181 P. (2d) 180, were apparently deemed decisive of the proposition that a divorce decree could not be vacated after the death of one of the parties.

The issue was not presented, and we do not attempt to decide whether the cases cited are decisive of the present case. It is clear that if Thelma Anderson was to claim any of the property of which Mr. Anderson died seized—on the theory that she was still his wife at the time of his death and, hence, entitled to the rights of a surviving spouse—she must

establish the invalidity of the divorce. Whether she could ignore the divorce provision of the decree and directly attack the property-settlement agreement as a fraud on her, and, its approval, as fraud upon the court, we do not determine, because that issue is not raised. Thelma Anderson, following the dismissal of the show cause, has proceeded solely on the theory that the divorce was invalid and that she was the surviving spouse and an heir of Albert B. Anderson. On that theory, she filed, in his estate, a petition asking that she be adjudged to be the surviving wife and an heir of the deceased.

She also filed a claim against the estate for the "full amount of her rights as his widow and the sole heir at law of the deceased, Albert B. Anderson." The claim was rejected, and she commenced an action thereon against the administratrix, which was consolidated, for hearing and determination, with the petition in the probate proceeding.

On a motion for summary judgment, the trial court entered an order on October 14, 1957, dismissing her claim against the estate with prejudice, and, on the same day, entered an order denying and dismissing her petition to be adjudged the surviving wife and an heir of Albert B. Anderson.

From these two orders this appeal is taken.

The trial court, in making both orders, relied upon the fact that there was a divorce decree, valid on its face, which established that Thelma Anderson was not the wife of Albert B. Anderson at the time of his death; that to succeed in any of her attempts to establish that she was the surviving spouse of Albert B. Anderson, she must show the invalidity of that decree; that the direct attack on that divorce decree had been dismissed; no appeal had been taken from the order of dismissal, and no other direct attack commenced; that the divorce decree was not subject to collateral attack in the probate proceeding to determine heirship, or in the suit on the rejected claim.

█ The trial court was correct, and the final proposition that the divorce decree was not open to collateral attack is

the only one that requires the support of any decisional authority.

We have, several times, approved a definition of collateral attack, which appeared in 34 C. J. 521, § 827, and we have—at least three times—quoted it at length. *Thompson v. Short* (1940), 6 Wn. (2d) 71 (at p. 81), 106 P. (2d) 720; *In re Peterson's Estate* (1942), 12 Wn. (2d) 686 (at p. 726), 123 P. (2d) 733; *Batey v. Batey* (1950), 35 Wn. (2d) 791, 798, 215 P. (2d) 694. (The statement in question, not materially changed, is found in 49 C. J. S. 809, Judgments § 408 (b).) It seems unnecessary to take fourteen lines to quote it yet again. We continue to approve it. Under any definition, the proceedings from which these appeals are taken constituted collateral attacks upon the divorce decree. See, also, *Hanna v. Allen* (1929), 153 Wash. 485, 491, 279 Pac. 1098.

■ A judgment rendered by a court having jurisdiction of the parties and of the subject matter, not reversed and not vacated, is not open to contradiction or impeachment by parties or privies by a collateral attack, except for fraud of a character going to the jurisdiction of the court which prevents it from obtaining the requisite power to entertain or decide the issues in controversy. *Baskin v. Livers* (1935), 181 Wash. 370, 374, 43 P. (2d) 42; *Sears v. Rusden* (1951), 39 Wn. (2d) 412, 419, 235 P. (2d) 819; *Batey v. Batey, supra*; Freeman on Judgments (5th ed.) 661, § 331.

In *Batey v. Batey, supra*, we explored at some length the character of the fraud which justified a collateral attack on a final judgment. We there concluded that it is only where the fraud practiced by the successful party goes to the very jurisdiction of the court itself that the judgment is subject to collateral attack. We also referred to a comprehensive statement in *Dockery v. Central Arizona Light & Power Co.* (1935), 45 Ariz. 434, 45 P. (2d) 656.

■ As said by the trial court in his very thorough memorandum decision,

"Assuming that Albert B. Anderson did fraudulently withhold information from the Court at the time of obtaining the decree, it nevertheless is plain from the record that no fraud was practiced in obtaining jurisdiction for Thelma

Anderson was personally served in the State of Washington and was not, at that time, under any legal disability. The Court did acquire jurisdiction of the subject of the action and of the person of the defendant. The fraud, if any there was, was extrinsic and thus of such a nature that it could be presented to the court only in a proceeding to directly set aside the judgment originally rendered. It cannot be used as a basis for a collateral attack."

Both orders appealed must be and are affirmed.

DONWORTH, WEAVER, ROSELLINI, and FOSTER, JJ., concur.

October 20, 1958. Petition for rehearing denied.