[Nos. 1603-2; 1604-2; 1605-2. Division Two. August 11, 1976.]

THE STATE OF WASHINGTON, *Appellant*, v. JAMES ALAN PETERSEN, *Respondent.*
THE STATE OF WASHINGTON, *Appellant*, v. GARY LYNN MALLIOT, *Respondent.*
THE STATE OF WASHINGTON, *Appellant*, v. ARTHUR FRANK BAMER, *Respondent.*

*Curtis M. Janhunen, Prosecuting Attorney,* and *George Bowden, Deputy,* for appellant.

*John Wolfe,* for respondents.

PETRIE, C.J.—In this consolidated appeal, the State of Washington seeks reversal of the trial court's dismissal, on the basis of the defective suspension of the defendants' driver's licenses, *i.e.,* without notice and opportunity for hearing on the question of their liability for accidents in which they were involved, of habitual traffic offender proceedings against James Alan Petersen, Gary Lynn Malliot, and Arthur Frank Bamer. We agree with the State that the court should not have considered whether the licenses had been improperly suspended when it heard the habitual traffic offender proceedings, and we vacate the orders of dismissal.

The facts are undisputed. James Petersen's driver's license was suspended on February 15, 1973, for failure to deposit security to satisfy any potential judgments for damages resulting from an auto accident, as required by RCW 46.29.070. He was subsequently convicted of three violations of driving while under suspension of license. Similarly, Gary Malliot's license was suspended on July 31, 1972, for his failure to deposit security following an accident. He was subsequently convicted of four separate offenses of driving under suspension of license. Arthur Bamer's operator's license was suspended on April 19, 1969, for cancellation of his insurance following an auto accident. This was followed by a conviction for driving under suspension of license and two convictions for driving under the influence of alcohol. Each defendant's license was suspended automatically, without hearing, upon failure of compliance with RCW 46.29.

In 1974 the State filed habitual traffic offender complaints against all three defendants pursuant to RCW 46.65.020:

> As used in this chapter, unless a different meaning is plainly required by the context, an habitual offender shall mean any person, resident or nonresident, who has accumulated convictions or, if a minor, shall have violations recorded with the department of motor vehicles, or forfeited bail for separate and distinct offenses as described in either subsection (1) or (2) below committed within a five year period, as evidenced by the records maintained in the department of motor vehicles: . . .
> (1) Three or more convictions, singularly or in combination, of the following offenses:
> . . .
> (b) Driving or operating a motor vehicle while under the influence of intoxicants or drugs; or
> (c) Driving a motor vehicle while his license, permit, or privilege to drive has been suspended or revoked;

Pursuant to RCW 46.65.060, if the court finds that the defendant named in the complaint is a habitual traffic offender, it enters an order forbidding him to operate a vehicle on the public highways. The Department of Motor Vehicles then revokes his operator's license for 5 years.

· However, in the cases at bench, the trial court dismissed the habitual offender complaints in view of *Bell v. Burson*, 402 U.S. 535, 29 L. Ed. 2d 90, 91 S. Ct. 1586 (1971), which held unconstitutional a Georgia statutory scheme directing the summary suspension, without hearing, of the driver's license of one who is involved in an accident and who fails to post security to cover potential damages. It is now settled that the Department of Motor Vehicles may not constitutionally suspend a driver's license under RCW 46.29 without a prior hearing on the question of fault or liability for the accident. *Flory v. Department of Motor Vehicles*, 84 Wn.2d 568, 527 P.2d 1318 (1974). The department's current regulations afford a presuspension notice and opportunity for a hearing. WAC 308-102-200 *et seq.*

The State's essential argument on appeal is that a defendant in a habitual traffic offender proceeding is not entitled to collaterally attack the validity of the convictions supporting the action by alleging the impropriety of the prior license suspension. We agree.

■ In urging the invalidity of their license suspensions as grounds for reversal of the traffic convictions underlying the habitual offender charges, the defendants are attempting a collateral attack upon those convictions, *Batey v. Batey*, 35 Wn.2d 791, 215 P.2d 694 (1950), unlike the successful direct attack on the suspension in *Bell v. Burson*, *supra*. A collateral attack may be maintained only against a final order or judgment which is absolutely void, not merely erroneous or voidable, *Bresolin v. Morris*, 86 Wn.2d 241, 543 P.2d 325 (1975), *Peyton v. Peyton*, 28 Wash. 278, 68 P. 757 (1902), and then only on the basis of fraud going to the very jurisdiction of the court. *Anderson v. Anderson*, 52 Wn.2d 757, 328 P.2d 888 (1958). A judgment is void only where the court lacks jurisdiction of the parties or the subject matter or lacks the inherent power to enter the order involved. *Bresolin v. Morris, supra; Anderson v. Anderson, supra; see National Bank v. McCrillis*, 15 Wn.2d 345, 130 P.2d 901, 144 A.L.R. 1197 (1942).

■ The initial orders of suspension of the Department

of Motor Vehicles are appealable to superior court. RCW 46.29.040. Even assuming these *suspensions* to be void on their face because no prior hearings were held as required by *Bell v. Burson, supra,* the municipal and district court convictions are not absolutely void. The traffic charges could perhaps have been defended on that ground at trial or challenged on direct appeal, but are not subject to collateral attack in a separate habitual offender proceeding. *See State v. Scheffel,* 82 Wn.2d 872, 514 P.2d 1052 (1973); *State ex rel. Superior Court v. Sperry,* 79 Wn.2d 69, 483 P.2d 608 (1971). As the Supreme Court recently observed in refusing to overturn habitual traffic offender judgments supported by uncounseled traffic convictions,

> license revocation . . . proceedings, even if termed a collateral consequence of accumulated driving convictions, must be viewed as a consequence that is indirect and removed, both in time and in purpose, from the original driving convictions of the offender.

*State v. Francis,* 85 Wn.2d 894, 896, 540 P.2d 421 (1975).

The dismissals of the habitual traffic offender complaints are vacated, and the actions are remanded to superior court for further proceedings thereunder.

PEARSON and REED, JJ., concur.