[No. 5916–1.   Division One.   February 13, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. JIMMIE
L. SWINDELL, *Appellant.*

*Robert Olson* of *Seattle–King County Public Defender,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Julia I. Baute, Deputy,* for respondent.

DORE, J.—Jimmie L. Swindell appeals from his conviction by a jury of violating RCW 9.41.040 (possession of a pistol by one previously convicted of a crime of violence).

## ISSUES

1. Does a conviction for carrying a concealed weapon bar subsequent prosecution under RCW 9.41.040 when both offenses arise out of the same transaction?

2. When a prior conviction is an element of an offense, can the defendant collaterally attack the constitutional validity of his prior guilty plea?

3. Considering all the facts of this case, was the prior guilty plea involuntary?

## FACTS

On April 22, 1977, Jimmie L. Swindell was arrested for carrying a concealed weapon (a violation of a Seattle municipal ordinance). It was determined on the next day by fingerprint comparison that he had been using the false name of Bennett and that his actual name was Swindell. When it was also determined that he had a prior conviction of a crime of violence, he was booked on suspicion of violating RCW 9.41.040. The detective conducting this investigation took the information about the prior conviction to the prosecuting attorney on the morning of April 27. On the next day, Swindell pleaded guilty in Seattle Municipal Court and was sentenced for carrying a concealed weapon. An information charging Swindell under RCW 9.41.040 was

filed in Superior Court on May 26, 1977. The trial court held there was no double jeopardy.

The information alleged a prior conviction in Spokane for second–degree assault on April 18, 1969. At a pretrial hearing, Swindell testified to the circumstances surrounding his 1969 plea. In 1969, he was represented by an attorney whom he saw once outside of a courtroom and then only for a half hour. Just before his scheduled court appearance, a sheriff took Swindell from the jail to the prosecutor's office. His counsel was not present at this meeting. The prosecutor told Swindell that unless he pleaded guilty, he would increase the charges to first–degree assault with the addition of a weapons charge which would result in a mandatory minimum sentence. Swindell never spoke to his attorney about this discussion and went directly to court to plead guilty because of what the prosecutor said. At the hearing, defense counsel announced he was ready for trial but had been instructed by Swindell that he wanted to plead guilty. The State did not present any testimony at the pretrial hearing so Swindell's testimony and the transcript of the plea were the only evidence of what transpired at the time of the 1969 conviction.[1]

At the time of the 1969 plea, the trial court made no finding concerning voluntariness. The trial court below accepted Swindell's testimony as true, but held the prosecutor's conduct did not render the plea involuntary.

## DECISION

ISSUE 1: Double Jeopardy

█ The facts of this case are virtually identical with those in *State v. Roybal,* 82 Wn.2d 577, 512 P.2d 718

---

[1]The record would not support a finding that Swindell's 1969 defense counsel waived any objections to the prosecutor's conduct in obtaining the guilty plea. At the plea hearing, the prosecutor informed the court that "Mr. Swindell has made a statement to me prior to the arraignment today regarding the crime." This comment generally supports Swindell's present claim that he met with the prosecutor, but it was not specific enough to place his defense counsel on notice of possible improprieties.

(1973), which held that a conviction for carrying a concealed weapon did not bar a subsequent prosecution under RCW 9.41.040. The "same evidence" test adopted in *Roybal* is still the law. *Brown v. Ohio,* 432 U.S. 161, 53 L. Ed. 2d 187, 194, 97 S. Ct. 2221 (1977); *State v. Worland,* 20 Wn. App. 559, 582 P.2d 539 (1978).

Issue 2: Waiver

In a prosecution under RCW 9.41.040, the State must plead and prove the conviction of the prior crime of violence. *Pettus v. Cranor,* 41 Wn.2d 567, 568, 250 P.2d 542 (1952), *cert. denied,* 345 U.S. 967, 97 L. Ed. 1385, 73 S. Ct. 954 (1953). We recently held in *State v. Boyd,* 21 Wn. App. 465, 586 P.2d 878 (1978), that when a prior conviction is an element of an offense which the State must prove, the defendant has the right to collaterally attack the voluntariness of the guilty plea upon which the prior judgment of conviction was entered. *See also State v. Brezillac,* 19 Wn. App. 11, 573 P.2d 1343 (1978). The State's contention that Swindell waived his right to attack his prior plea by not appealing or filing a petition for post-conviction relief is based upon an erroneous reading of *State v. Murdock,* 18 Wn. App. 294, 567 P.2d 267 (1977), *rev'd on other grounds,* 91 Wn.2d 336, 588 P.2d 1143 (1979), and *State v. Petersen,* 16 Wn. App. 77, 553 P.2d 1110 (1976). In *Murdock,* the record established a presumption that the defendant's plea was valid, and his collateral attack was insufficient to overcome the presumption. *Petersen* merely held that one cannot collaterally challenge the merits of an alleged prior offense. Furthermore, *Petersen* was a civil proceeding because it was a habitual traffic offender case. RCW 46.65; *State v. Ponce,* 21 Wn. App. 277, 584 P.2d 482 (1978). Unlike the subject case which is a criminal case (RCW 9.41.040), the civil nature of the habitual traffic offender proceeding has been held to preclude collateral attack on the underlying driving convictions. *State v. Ponce, supra.* We reaffirm our recent holding that an accused in a criminal case may defend against an information charging a prior conviction by collaterally attacking the voluntariness

of a prior guilty plea on which a judgment of conviction was secured. *State v. Boyd, supra.*

ISSUE 3: Voluntariness of the Plea

█ The Supreme Court defined voluntariness in *Woods v. Rhay,* 68 Wn.2d 601, 605, 414 P.2d 601 (1966), *cert. denied,* 385 U.S. 905, 17 L. Ed. 2d 135, 87 S. Ct. 215 (1966).

To be voluntary, a plea of guilty must be freely, unequivocally, intelligently and understandingly made in open court by the accused person with full knowledge of his legal and constitutional rights and of the consequences of his act. It cannot be the product of or induced by coercive threat, fear, persuasion, promise, or deception.

█ The mere fact that a plea of guilty was induced by a threat to file increased charges or a promise to refrain from filing additional charges does not vitiate the plea if it was in fact voluntary. *Watkins v. Solem,* 571 F.2d 435 (8th Cir. 1978); *Garrison v. Rhay,* 75 Wn.2d 98, 100, 449 P.2d 92 (1968). The holding in *Watkins v. Solem, supra,* was based upon the recent decision in *Bordenkircher v. Hayes,* 434 U.S. 357, 54 L. Ed. 2d 604, 98 S. Ct. 663 (1978). *Hayes* upheld the right of a prosecutor to act on a threat to file increased charges if the defendant did not plead guilty provided there was no vindictiveness and the facts justified filing increased charges. *Watkins v. Solem, supra,* warned at page 436 that

Hayes . . . cannot be read as a grant of *carte blanche* authority for a prosecutor to unduly threaten and coerce a criminal defendant into making a guilty plea. It would appear that a prosecutor's offer to refrain from filing more serious charges in exchange for the defendant's guilty plea to a lesser charge is not unconstitutional per se. However, prosecutors should not view *Hayes* as giving them the right to abuse their prosecutorial powers.

On the record before us, we conclude the prosecutor's threat to Swindell was inherently intimidating and that the prosecutor took an unfair advantage and coerced Swindell into making a guilty plea. Swindell was in custody and was

transported by a deputy sheriff from the jail to the prosecutor's office shortly before his court appearance. The threat was made in the prosecutor's office and was never disclosed to defendant's counsel. There is no record Swindell was ever advised he had a right to have counsel with him in the prosecutor's office. After the threat, he was taken directly to the courtroom where he told his counsel he wanted to plead guilty but did not mention the threat. Counsel informed the court he was prepared for trial, but his client had decided to plead guilty. Based upon this unrebutted evidence, we conclude the guilty plea was the product of the prosecutor's coercive threat and was constitutionally invalid. *Watkins v. Solem, supra; Woods v. Rhay, supra.*

In deciding *Bordenkircher v. Hayes, supra,* the Supreme Court noted that with the advice of counsel and the protection of other procedural safeguards, plea bargaining leads to a presumption of an intelligent choice. *Bordenkircher v. Hayes, supra* at 363; 54 L. Ed. 2d at 611. No such presumption is possible under these facts which totally subverted the plea bargaining process and deprived Swindell of the advice of counsel. The prosecutor's concealed, last-minute threat was precisely the type of activity that properly administered plea bargaining was intended to eliminate. *Blackledge v. Allison,* 431 U.S. 63, 76, 52 L. Ed. 2d 136, 97 S. Ct. 1621 (1977).

Reversed.

RINGOLD, J., concurs.

WILLIAMS, J. (dissenting)—The trial court did not accept Swindell's testimony as true. Rather, the court said:

If the prosecuting attorney had in fact related what the defendant has related, it would be well within the prosecution's discretion to amend the complaint, considering this is 1969, upward from second degree to first degree assault, noting on Page 4 of Exhibit 4 that the defendant picked up the knife and ended up stabbing one of the

people he states was following him in the back. That is Lines 2 and 3 of that transcript, Page 4.

The exhibit 4 referred to is a transcript of the court proceedings in which Swindell changed his plea from not guilty to guilty of second–degree assault.

It appears in the transcript that after changing his plea, Swindell heard the prosecutor recite the facts of the crime:

The victim came in about—entered this restaurant about an hour' before the assault took place. The defendant states that he was leaving. There had been some words between the eventual victim and another at this restaurant or cocktail lounge, and that he was leaving the place when the victim and another came after him, in his words, and that he picked up a knife with a blade 8 to 10 inches long as they passed from the cocktail lounge area on out in back of the restaurant part or cafe, and the knife was laying on a table. They apparently have to go through the kitchen to get out. He picked this knife up and ended up stabbing one of the people he states was following him, in the back.

The statement from the victim and the statements from all parties who were at or near the scene of this assault, indicate that there was no difficulty of any serious nature prior to the stabbing. That the first thing anybody knew, that the victim had been stabbed, he walked out of the kitchen area and collapsed on the floor and was later taken to Sacred Heart Hospital with a knife wound in the back. Then he spent two days in the hospital and has since been discharged.

The prosecutor discusses the aftermath of the stabbing and then states:

Mr. Swindell has made a statement to me prior to the arraignment today regarding this crime.

The prosecutor then reviewed Swindell's criminal record. Following this, Swindell's attorney addressed the court:

THE COURT: Mr. Deglow?

MR. DEGLOW: May it please the court, Mr. Swindell has employed me as his counsel. I have talked to him and we prepared this case for a proper defense, investigating it to the best of my self–limited capacity. I got his instructions today, and was ready to go to trial.

Defense counsel then describes the events as follows:

That one of them comes after him, saying something. He was on his way out of the cocktail lounge, and had no words with anybody; hadn't had any argument; nobody had jumped him or knocked any of his drinks over, and he hadn't knocked any drinks of anybody over. He didn't cause any disturbance. He had paid for his drinks and was on the way out, when words were exchanged between them, indicating to him that they were going to beat the living devil out of him. He didn't know these people at all, had never seen them before. They were close to him and he was very close to the kitchen. His fear was that they were going to beat him, and he grabbed the knife and somehow intentionally used it on one of the individuals. When the bartender asked him for the knife, he didn't fight with anybody. He just put it down and waited a few minutes and left.

Counsel then discusses Swindell's personal situation. Following this, the court speaks:

THE COURT: The defendant will please rise. Mr. Swindell, do you have any legal reason to assign why sentence should not now be pronounced against you?

DEFENDANT: No.

THE COURT: Is there anything else you wish to state to the court?

DEFENDANT: No, sir.

MR. DEGLOW: Now is the time to say anything if you want to say anything.

DEFENDANT: No.

THE COURT: On your plea of guilty to the crime of Second Degree Assault, it is the judgment of the court you are so guilty.

Later in the sentencing process the following occurred:

MR. DEGLOW: Your honor, he feels you are fixing a mandatory period of time for him to serve. I informed him before your sentence here is the maximum one, and after six months the Board of Prison Terms and Paroles will make a review of this case and will indicate the time he will serve. I request, if that isn't clear—.

The judge is not sentencing you to 10 years, so to speak. He has to give you what is called the maximum sentence. He is not entitled to determine the length of

634

time. By state statute, the Board of Prison Terms and Paroles will make the determination of what your sentence is. He is not sentencing you to any mandatory time, but he has to give you the full sentence.

Now, if that isn't clear, perhaps you could clarify it for him, your Honor.

THE COURT: I think you have perhaps stated better than I did before what I said before. The sentence is for not more than ten years, but the actual time is not set by the court, but is set by the state agency.

The hearing was then concluded.

With this record of the circumstances, occurring prior to *Boykin v. Alabama,* 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969), which established standards for the acceptance of guilty pleas, the court was justified in finding that Swindell was not coerced into changing his plea. The court was not required to believe Swindell's version of what happened.

The judgment should be affirmed.

Reconsideration denied March 22, 1979.

Appealed to Supreme Court April 6, 1979.