[No. 34060. Department One. April 24, 1958.]

THE STATE OF WASHINGTON, *Respondent*, v. EARL EUGENE HOLT, *Appellant*.[1]

[1]Reported in 324 P. (2d) 793.

*Richard D. Harris* and *Max R. Nicolai*, for appellant.

*Charles O. Carroll, Laurence D. Regal,* and *Joel A. C. Rindal,* for respondent.

WEAVER, J.—Defendant appeals from a judgment and sentence entered after his trial and conviction on twelve counts of grand larceny by embezzlement and one count of petit larceny.

All counts of the information are substantially the same, except the dates and the value of the property involved. See Laws of 1955, chapter 97, § 1, p. 497.

Count I of the information alleges:

"He, the said EARL EUGENE HOLT, in the County of King, State of Washington, on or about the 9th day of October, 1953, then and there being Manager of the Surplus Property Section, of the Division of Purchasing of the State of Washington Department of General Administration, and having in his possession, custody or control as said agent or *public officer*, certain personal property, to-wit: surplus scrap metal, *the property of the United States,* then and there willfully, unlawfully and feloniously did secrete, withhold, appropriate and convert to his own use said property, of a value in excess of $25.00, in lawful money of the United States, with intent to deprive and defraud the owner thereof;

"Contrary to the statute in such case made and provided, and against the peace and dignity of the State of Washington." (Italics ours.)

Defendant was charged under the provisions of RCW 9-.54.010 (3), which provides:

"Every person who, with intent to deprive or defraud the owner thereof—

"
 . . .

"(3) *Having any property in his possession,* custody or control, as bailee, factor, pledgee, servant, attorney, agent, employee, trustee, executor, administrator, guardian or officer of any person, estate, association or corporation, or *as a public officer,* or a person authorized by agreement or by competent authority to take or hold such possession, custody or control, or as a finder thereof, shall secrete, withhold

or appropriate the same to his own use or to the use of any person other than the true owner or person entitled thereto; . . .

" . . .

"Steals such property and shall be guilty of larceny." (Italics ours.)

By statute, the Federal government may allocate its surplus property to various state departments and political subdivisions, and to nonprofit, tax-supported charitable institutions, schools, universities, and hospitals.

"No such property shall be transferred for use within any State except to the *State agency* designated under State law for the purpose of distributing [it] . . ." 40 U. S. C. (1952 ed., Supp. IV) § 484 (j).

■ At all times mentioned in the information, defendant was a *public officer* within the meaning of RCW 9.54.010 (3), quoted *supra*. He was the manager of the surplus property section of the division of general administration of the state of Washington. See RCW 39.32. In this capacity, he was the manager of the state's surplus property warehouse in the city of Seattle and in charge of the Federally owned surplus property allocated for use within the state of Washington.

The theme of the thirteen counts of the information is that defendant, while manager of the state's surplus property warehouse, wrongfully converted certain surplus properties that came into his possession as manager and appropriated the proceeds to his own use.

There is evidence in the record, if believed by the jury, to support the conclusion that title to surplus property allocated to the state of Washington remained in the Federal government until its delivery to and use by an eligible donee. Title then passed to the donee. Considerable surplus property previously delivered to eligible donees was returned by them to the state's surplus property warehouse.

Defendant testified that the property sold by him was either (1) scrap metals returned to the warehouse by donees or (2) property purchased by him as an *individual* for resale.

The crux of defendant's argument on appeal is that he was charged with one crime (RCW 9.54.010 (3)) and convicted of another. RCW 40.16.020. He claims the trial court erred (1) in failing to sustain a challenge to the sufficiency of the evidence, on the ground that the state failed to prove ownership of the property as alleged, *i.e.*, in the United States; (2) in submitting instruction No. 15, which advised the jury that the issue of ownership was immaterial; (3) in submitting instruction No. 16, which stated that the defendant could not legally acquire title to surplus property; (4) in submitting instruction No. 17, which stated that the defendant as a public officer could not acquire surplus property; and (5) in failing to submit requested instructions Nos. 12 and 13, which require the state to prove ownership as alleged.

The information charges that the property converted was "the property of the United States." The proof discloses that title to the surplus property in defendant's possession, as manager of the warehouse, was either in the Federal government or some eligible donee that had returned the property to the warehouse.

For either of two reasons, defendant's challenges to the sufficiency of the evidence are not well taken.

First: The phrase, "the property of the United States," as it appears in the information, is surplusage and immaterial. Delete it and the information remains sufficient to charge the crime of larceny under RCW 9.54.010 (3), because it still alleges that the conversion of property was done with "intent to deprive or defraud the owner thereof."

Further, RCW 10.37.090 provides:

"When the crime involves the commission of, or an attempt to commit a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured or intended to be injured is not material."

In *State v. Kruger*, 145 Wash. 654, 655, 261 Pac. 383 (1927), this court said:

"It has long been held that it is not necessary for the state to identify stolen property as belonging to any specified individual. Convictions of larceny have been affirmed on the proof that the property involved did not belong to the defendant, while its actual ownership could not be positively shown. [Citing cases.]"

See *State v. Linden,* 171 Wash. 92, 17 P. (2d) 635 (1932).

 Second: Under the authority of *State v. Tharp,* 42 Wn. (2d) 494, 497, 256 P. (2d) 482 (1953), any possible variance between the information and the proof was cured by Rule of Pleading, Practice and Procedure 12. Therein, this court said:

"Evidence of the nature of the offense was admitted without objection, and any possible variance between the pleading and proof was cured by the operation of Rule of Pleading, Practice and Procedure 12, 34A Wn. (2d) 76. This rule provides that

" ' . . . An information shall be considered amended to conform to the evidence introduced without objection in support of the crime substantially charged therein, unless the defendant would thereby be prejudiced in a substantial right.'

"The amendment under the rule did not prejudice any substantial right of defendant. *It charged no crime different from that substantially charged in the information* or under a different section of the criminal code. If considered amended by the proof, it remained a charge of a violation of Rem. Rev. Stat., § 2601 (4), RCW 9.54.010 (4). See *State v. Olds,* 39 Wn. (2d) 258, 261, 235 P. (2d) 165 (1951)." (Italics ours.)

We conclude, therefore, that the court did not err when it refused to sustain defendant's challenges to the sufficiency of the evidence, as claimed in defendant's first assignment of error. This conclusion also disposes of defendant's fifth assignment of error.

Defendant's second assignment of error is directed to instruction No. 15, which reads as follows:

"You are instructed that one of the allegations in each count in the information is that the property alleged to have been unlawfully converted by the defendant to his own use was the property of the United States. *In this*

*respect* you are further instructed that, if you find as to any count that in regard to all of the other allegations of any such count the State has proven the same beyond a reasonable doubt, then the ownership of such property would be immaterial." (Italics ours.)

■ The trial court did not merely instruct the jury, as defendant argues, that the ownership of the property was immaterial; but stated that the ownership of the property *would be immaterial* if all of the other allegations contained in any one count were proved beyond a reasonable doubt.

When instructions Nos. 15 and 3 are considered together, we find that the jury was instructed that the state was required to prove beyond a reasonable doubt that the defendant, on or about the specific date set forth in any count, (1) was an agent or public officer of the state of Washington; (2) that, as such agent or public officer, the defendant had in his possession certain surplus property; (3) that defendant willfully, unlawfully, and feloniously secreted, withheld, appropriated, or converted the said surplus property to his own use with intent to deprive and defraud the owner thereof; also, (4) that the property was, at least, of the value alleged in the specific counts of the information; and (5) that the act or acts occurred in King county.

If the jury found that the state had established these five elements beyond a reasonable doubt, the ownership of such property in the United States (as identified in the first sentence of instruction No. 15) would be immaterial, as we have previously discussed when disposing of defendant's first assignment of error.

We do not find that defendant was prejudiced by instruction No. 15.

Defendant testified that, as an individual and while he was an employee of the state, but before he became manager of the state's surplus property warehouse, he purchased some aluminum and stainless steel sheets from the Sand Point naval air station in Seattle; that he believed this to be a portion of the surplus property sold to the junk dealer; and that

" . . . I did take the amount that I had paid them and

placed it in my own account, reimbursed what I had paid out."

The administrative assistant to the supply and fiscal officer of the United States naval air station of Seattle testified that he found no record of a sale of aluminum sheets to defendant "under that name." He also testified that it was possible for the air station to sell surplus property to a state agency. He did not check the records to determine if any property had been sold to the state agency during the time in question.

RCW 42.20.010 provides:

"Every *public officer* who:

". . .

"(2) Is beneficially interested, directly or indirectly, in any contract, sale, lease, or purchase which may be made by, through or under the supervision of such officer, in whole or in part, or which may be made for the benefit of his office, or accepts, directly or indirectly, any compensation, gratuity or reward from any other person beneficially interested therein; or

"(3) Employs or uses any person, money or property under his official control or direction, or in his official custody, for the private benefit or gain of himself or another; shall be guilty of a gross misdemeanor, *and any contract, sale, lease or purchase mentioned in subdivision (2) hereof shall be void.*" (Italics ours.)

With this statutory and factual background, it was not error for the court to instruct (instructions Nos. 16 and 17) that the defendant could not (a) *"as a state employee lawfully purchase property as such officer from any owner so that title would pass to himself"*; and that (b) *"such official may not acquire title to any such property in himself from any source by bid, sale, or otherwise."*

The judgment is affirmed.

HILL, C. J., MALLERY, FINLEY, and OTT, JJ., concur.