THE STATE OF WASHINGTON, *Respondent*, v. THOMAS DAVID
HINK, *Appellant*.

*Richard L. Cease* and *Sid Wurzburg*, for appellant.

*Donald C. Brockett, Prosecuting Attorney*, and *James B.
Crum, Deputy*, for respondent.

EVANS, J.—Defendant Thomas Hink, also known as
Shawn Turner, appeals from a conviction of possession of a
dangerous drug, LSD.

On November 10, 1970 Detective George Schee, a mem-

ber of the narcotics squad of the Spokane County Sheriff's office, signed an affidavit for and obtained a search warrant authorizing search of apartment 6 at 2026 West Fourth, Spokane, Washington. Armed with the search warrant, officers searched the apartment, found 1,600 units of LSD and arrested the defendant, among others.

■ Defendant challenges the validity of the search, and the question first presented is whether he has standing to do so. The search warrant affidavit refers to a person named "Shawn" as being involved in a drug transaction and the information charges the defendant Thomas Hink, also known as Shawn Turner. One of the witnesses testified that she was the renter of apartment 6 at 2026 West Fourth in Spokane, that she had been dating the defendant, whom she knew as Shawn Turner, and that at the time of the search defendant was an invited guest in her apartment. In other words, the search warrant was directed at the defendant. As the person against whom the search was directed, we hold that defendant has standing to challenge the search. As stated in *Jones v. United States*, 362 U.S. 257, 267, 4 L. Ed. 2d 697, 80 S. Ct. 725, 734, 78 A.L.R.2d 233 (1960):

> No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him.

In attacking the affidavit[1] defendant relies on *Aguilar v.*

---

[1]The affidavit recites in pertinent part that the affiant "received information from an informant known to this officer as a reliable informant who has made several cases for outside law agencies and has given this agent information which was verified from an independent source and is reliable, that a subject known to him is to deliver a large quantity of LSD at 2026 West 4th, Apartment #6, this afternoon. Another individual working with #1 informant who is a commissioned Police Officer having worked with the Chelan County Sheriff's Office and Thurston County Sheriff's Office and made an excess of 50 narcotic cases and is reliable and known to this agent, has accompanied the 1st informant and personally knows one of the parties involved who uses

*Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964) and *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969). He contends the affidavit is insufficient to establish probable cause (1) because it does not set forth the underlying circumstances which enable a magistrate to independently judge the validity of an informant's conclusion that contraband is likely to be found where it is said to be; and (2) the claim the informant was credible and his information reliable is not supported within the affidavit.

We cannot agree. Detective Schee swore that on the day of making the affidavit he had been given information from two separate informants who corroborated each other's story, and who were both reliable in that they had on several previous occasions supplied reliable information to law enforcement agencies. Informant No. 1 related to affiant that the "subject known to him was to deliver a large quantity of LSD to 2026 W. Fourth, Spokane, apartment 6 this afternoon." Informant No. 2 related that "a quantity of cocaine and LSD was to be delivered to the apartment at 2026 W. Fourth, Apartment 6." The underlying basis for the information of both informants is that they "received this information from Shawn and believe it to be true and correct." This much of the affidavit is enough to establish probable cause. *Aguilar v. Texas, supra; Spinelli v. United States, supra; Jones v. United States, supra; Carroll v. United States,* 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925); *Brinegar v. United States,* 338 U.S. 160, 93 L. Ed. 1879, 69 S. Ct. 1302 (1949); *Draper v. United States,* 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329 (1959); *United States v. Ventresca,* 380 U.S. 102, 13 L. Ed. 2d 684,

---

the name Shawn, has known him from past contact in Wenatchee as a dealer narcotics and/or dangerous drugs, and states that a quantity of cocaine and LSD is to be delivered at the apartment on 2026 W. 4th, Apartment #6.

"He received this information from Shawn and believes it to be true and correct. Both informants on the evening of November 9, 1970, while at 1023 E. Nora, saw Shawn with 1600 doses of LSD in various forms. From prior contact with these drugs the informants are positive that this is in fact LSD."

85 S. Ct. 741 (1965); *State v. Peterson,* 3 Wn. App. 946, 478 P.2d 745 (1970); *United States v. Harris,* 403 U.S. 573, 29 L. Ed. 2d 723, 91 S. Ct. 2075 (1971).

Defendant next contends that even if the affidavit on its face showed probable cause for the issuance of the search warrant, the evidence adduced at trial established that the officer did not in fact have sufficient competent evidence to show probable cause for the issuance of the search warrant because, in part, the affidavit was based on misstatements of fact. This contention must likewise be rejected. The third paragraph of the affidavit of Detective Schee recites "both informants on the evening of November 9, 1970 while at 1023 East Nora saw Shawn with 1600 doses of LSD in various forms." During the trial informant No. 1 testified that he had not seen any LSD at the Nora Street address on November 9, and further testified that he had never told Detective Schee that he had seen LSD at that address. Informant No. 2 testified he never saw defendant with any LSD prior to the time of the arrest, and further, he did not arrive in Spokane until 11:30 p.m. on the evening of November 9 and did not see the defendant on that date. Detective Schee testified it was his good faith belief that both informants had in fact told him they saw Shawn with 1,600 units of LSD on November 9, as stated in the affidavit. The fact that 1,600 units of LSD were actually found in the subsequent search indicates that at most Detective Schee was guilty of an honest misunderstanding of what the informants had told him. Neither false affidavits nor material inaccuracies necessary to a determination of probable cause can be sanctioned or condoned. However, this court will not strike down a warrant based upon a good faith affidavit which contains a misstatement that is only of peripheral relevancy. *Rugendorf v. United States,* 376 U.S. 528, 11 L. Ed. 2d 887, 84 S. Ct. 825 (1964). The factual inaccuracies relating to what informants were said to have seen at 1023 E. Nora were not necessary to determination of probable cause that a sale was to be made at a later time at 2026 W. Fourth, and, not being within the

personal knowledge of the affiant did not go to the integrity of Detective Schee's affidavit.

Defendant next contends the trial court erred in allowing the state's expert witness, John Anderson, to express his opinion that the material contained in exhibit 1 was LSD. We cannot agree.

Mr. Anderson is a criminologist holding a bachelor of science degree in chemistry, and at the time of trial was a candidate for a master's degree in forensic science. He had been employed for 13 years as the principal chemist and director of a New Jersey police laboratory and had testified as an expert witness concerning chemical tests and chemical analyses in more than 700 trials in New Jersey, Pennsylvania and New York, as well as in military courts.

The chemical tests conducted by Anderson established the presence of an indole hydrocarbon structure in the material contained in exhibit 1. Since several substances other than LSD contain such a structure, Mr. Anderson also noted the reaction time of the color change involved in that test, and stressed the importance of that time test in determining if the substance was LSD. He also made a microscopic examination of the material and the size, shape, color and noncommercial form and packaging of the substance. All of these factors were considered by Mr. Anderson in the light of his experience in identifying hallucinogenic drugs, and in his opinion the substance contained in exhibit 1 was LSD.

But defendant argues the state failed to prove the chemical reagents used in the test were of correct quantity and quality as required by State v. Baker, 56 Wn.2d 846, 355 P.2d 806 (1960). Baker, however, is distinguishable from the case at hand because that case involves a layman's use of a breathalyzer and the admission into evidence of the machine's result. In the instant case we are concerned not with the admission into evidence of a machine's result, but a chemical expert's opinion based upon a test with which he is familiar. The strict requirement of Baker must be limited to the results of the breathalyzer. The question now

before the court is whether the substance in question was LSD. The identification of such a substance goes beyond the knowledge of the average layman. Where identification of a substance requires special knowledge, skill, training, experience and education, it is properly within the realm of expert testimony. It is Hornbook law that an expert may state an opinion within the area of his expertise. In view of Mr. Anderson's qualifications as an expert in the field of chemical analyses and the data which he considered as a basis for his opinion, we find no error in permitting him to give his opinion that the substance examined was LSD.

■ Defendant next contends that certain exhibits were admitted without being properly identified. The chain of custody of these exhibits was established, and both Detective Baylor and Captain Braun testified that they appeared to be identical to the items seized in the apartment. This is all that was required. *State v. Russell,* 70 Wn.2d 552, 424 P.2d 639 (1967); *State v. Hayes,* 3 Wn. App. 544, 475 P.2d 885 (1970).

■ Finally, defendant contends it was error for the trial court to admit marijuana found in the seams and pockets of defendant's jacket, contending that to do so was unduly prejudicial to the defendant. Evidence of the commission of a collateral criminal act is admissible if it comes within one of the recognized exceptions—(1) to show motive or intent, (2) the absence of accident or mistake, (3) common scheme or plan, (4) identity, or (5) if the evidence is relevant to any material issue before the jury. *State v. Goebel,* 36 Wn.2d 367, 218 P.2d 300 (1950); *State v. Vindhurst,* 63 Wn.2d 607, 388 P.2d 552 (1964); *State v. Weiss,* 73 Wn.2d 372, 438 P.2d 610 (1968). The introduction of the marijuana found in defendant's pocket was intended to show knowing possession of an illegal substance and the absence of accident or mistake. At the time of the search five persons, other than police officers, were present. The search was not of the defendant's home, but rather that of one of his friends. The LSD was found, not on his person, but in a garbage can. Hence, there was a need to show defendant's

knowing possession of the LSD. The admission of defendant's jacket containing an illegal substance was relevant to that issue.

During the scope of the search a plastic bag, containing green vegetable material which the witness said appeared to be marijuana, was marked as an exhibit but never admitted into evidence. The jury was clearly admonished by the court that defendant was on trial for the possession of LSD, and not any other offense, and no further reference was made to the offered exhibit. Under these circumstances we find no prejudice to defendant.

Judgment affirmed.

MUNSON, C.J., and GREEN, J., concur.

Petition for rehearing denied March 1, 1972.

Review denied by Supreme Court April 24, 1972.