[Nos. 2502–2; 2553–2.   Division Two.   June 30, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. TERRY LEE WORLAND, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. HAROLD L. O'FLAHERTY, *Appellant.*

*William L. Britton* and *Clifford F. Cordes III* (of *Cordes, Cordes & Younglove*), for appellants.

*Patrick D. Sutherland, Prosecuting Attorney,* and *Richard A. Strophy, Chief Criminal Deputy,* for respondent.

SOULE, J.—Defendants Terry Worland and Harold O'Flaherty appeal their convictions for unlawful possession of a controlled substance. RCW 69.50.401(c). We reverse.

On March 20, 1976, police officers responded to a report that a Medic I unit had been called to the Angelus Hotel in Olympia to assist a man with a broken needle in his arm. On arrival, the officers saw defendant Worland at the top of the stairs outside room 11. He was receiving medical attention from the Medic I team. The officers learned from bystanders that Worland lived in room 11. Defendant O'Flaherty was present and told the officers that he also lived in room 11. He refused to permit the police to search the room. Worland was taken to the hospital for emergency treatment. Officer Auderer accompanied him. At the hospital, before he was formally arrested but after being warned of his *Miranda* rights, Worland allegedly told Officer Auderer that he had been using heroin in room 11.

Based on this information, a telephonic search warrant was obtained for room 11. The search revealed a small quantity of marijuana, spoons with traces of barbiturates, a syringe with a needle and nearly empty capsules containing a residue of barbiturates. Both defendants were arrested and held in Thurston County jail. On Monday, March 22, an information was filed, charging the two with willfully,

unlawfully, and feloniously possessing a controlled substance, to wit: barbiturates. O'Flaherty was arraigned the next day, while Worland was not arraigned until March 30. O'Flaherty obtained pretrial release but Worland did not.

On April 26 both defendants were tried in Olympia Municipal Court for possession of marijuana. O'Flaherty was convicted and Worland acquitted. On May 5, while awaiting trial, Worland was sentenced to 5 years on a prior conviction. At the trial on the barbiturates charge, the State presented evidence that both defendants lived in room 11, that they shared the rent, and that the barbiturates were found in areas to which both defendants had access. No actual possession by O'Flaherty was proven, but there was evidence that Worland had had personal contact with similar spoons, the syringe and capsules on the preceding evening while O'Flaherty was absent. At the close of the State's case, O'Flaherty's attorney moved to dismiss the case against him because the State had presented no evidence that he willfully possessed the barbiturates as charged in the information. This motion was denied. A jury convicted both defendants.

In this consolidated appeal, the defendants make numerous assignments of error. Due to our disposition of the case, we find it necessary to address only five of them.

Initially, defendants challenge the sufficiency of the search warrant on the ground that there was no probable cause, the affidavit contained misstatements, and the facts contained in the affidavit were stale. A reasonable search is one based on probabilities—a likelihood that evidence of criminal activity will be found. *State v. Patterson,* 83 Wn.2d 49, 515 P.2d 496 (1973). A magistrate's determination of probable cause may be based on commonsense inferences from the facts and circumstances contained in the affidavit and should be treated with deference by a reviewing court. *State v. Harris,* 12 Wn. App. 481, 530 P.2d 646 (1975). In this case, the officers' telephonic affidavit informed the magistrate that a man who lived at the address in question had a broken needle in his arm and

claimed to have injected heroin. From these facts, the magistrate was entitled to infer that evidence of drug possession might be found in room 11. There is sufficient probable cause to support the search warrant.

■ Defendants argue further that even if the facts contained in the affidavit constitute probable cause, the warrant is invalid because the affidavit contains misstatements. They claim that Worland did not tell Officer Auderer that he had injected drugs in room 11; rather, they now claim the police were told the drugs were used in room 6. Intentional misstatements or misstatements of material facts will invalidate a search warrant. *State v. Hink,* 6 Wn. App. 374, 492 P.2d 1053 (1972). However, at the suppression hearing in the trial court, the trial judge chose to believe the testimony of the police rather than defendants and their witnesses. Questions of credibility are for the trial court and we will not reverse a finding which is supported by substantial evidence. *Peter Pan Seafoods, Inc. v. Olympic Foundry Co.,* 17 Wn. App. 761, 565 P.2d 819 (1977).

■ Defendants also allege that because Worland had injected the drugs during the previous evening, the information contained in the affidavit was stale. The test for staleness is common sense; if it can be said from the facts contained in the affidavit that the information is recent and contemporaneous, then the affidavit cannot be considered stale. *State v. Clay,* 7 Wn. App. 631, 501 P.2d 603 (1972).

■ Defendant Worland contends that the doctrine of collateral estoppel applies and the State cannot try him for possession of the barbiturates following his municipal court acquittal for possession of marijuana. We note, however, that Worland did not raise the issue of collateral estoppel in the trial court. Issues not raised in the trial court will not be considered on appeal. *State v. Lewis,* 19 Wn. App. 35, 573 P.2d 1347 (1978). Were this issue properly before us, however, we would be unable to determine the merits because the record before us does not indicate what facts were necessarily determined at the marijuana trial. *State v.*

*Morlock,* 87 Wn.2d 767, 557 P.2d 1315 (1976); *Hawk v. Mills,* 476 P.2d 86 (Okla. Crim. App. 1970).

■ Closely related to his collateral estoppel argument is Worland's claim of double jeopardy. The state (Const. art. 1, § 9) and the federal (Fifth Amendment) constitutions prohibit placing a defendant in jeopardy twice for the same offense. Washington adheres to the "same evidence" test for double jeopardy. *State v. Morlock, supra; State v. Roybal,* 82 Wn.2d 577, 512 P.2d 718 (1973). In this case, there is a difference in the evidence required to convict in the two trials. One requires proof of possession of marijuana and the other requires proof of possession of barbiturates. The proof in one case would not support a conviction in the other case. *State v. Morlock, supra.*

■■ Worland contends he was denied a speedy trial. His argument consists of two prongs. He first claims that because he was in custody while awaiting trial, the 60–day rule of CrR 3.3(c) applies. Because his preliminary appearance was March 30 and trial was June 21, more than 60 days elapsed. The 60–day rule does not apply to Worland, however, because after May 5 he was being held on another sentence. Consequently he was unable to obtain pretrial release under CrR 3.3(c). That rule refers to the ability to obtain pretrial release because of the pendency of the current criminal charges. *State v. Keith,* 86 Wn.2d 229, 543 P.2d 235 (1975); *State v. Curry,* 14 Wn. App. 775, 545 P.2d 1214 (1976); *State v. O'Neil,* 14 Wn. App. 175, 540 P.2d 478 (1975). Worland next claims that even if the 90–day rule of CrR 3.3(b) applies, his right to a speedy trial was denied. Relying on the rationale of *State v. Striker,* 87 Wn.2d 870, 557 P.2d 847 (1976) and *State v. Stanmore,* 17 Wn. App. 61, 562 P.2d 251 (1977), he contends that for purposes of computing time, the date the information was filed, March 22, rather than the date of his preliminary appearance, March 30, should be used. We need not decide this issue, however, because even if the 90 days are counted from March 22, trial was still within the period. Even though June 21 is 91 calendar days after March 22, CrR 8.1

requires time to be computed in accordance with CR 6. The day before commencement of the trial, a Sunday, is not counted in computing the 90–day limitation of CrR 3.3(b). *State v. Curry, supra.* Therefore, Worland was tried within the 90–day period and was not denied his right to a speedy trial.

■ Both defendants challenge the sufficiency of the evidence to establish the identity of the suspected contraband. The State's expert witness, Marianne Uyeda, testified that she "concluded" that the substances were pentobarbital, a derivative of barbituric acid. Worland argues that because her testimony was in conclusionary rather than opinion form that this was insufficient proof. We disagree. It is clear from the context that Ms. Uyeda was expressing her opinion; the precise form of the testimony is unimportant.

The defendant's next assignment of error involves instruction No. 9, which provides:

> If you find from the evidence beyond a reasonable doubt that the defendant was on or about the dates set forth in the Information, in Thurston County, State of Washington, in possession of a controlled substance described in the Information herein, then I instruct you that unless you find evidence to the contrary, the presumption arises that this possession of such drug was unlawful and the burden of showing that possession of such drug was unwitting or otherwise lawful by the defendant is a matter of defense to be proved by evidence sufficient to raise in your minds a reasonable doubt as to the unlawfulness of the said defendant's possession of such drug.

■ Defendants challenge this instruction on the ground that it violates due process by impermissibly shifting the burden of proof as to an element of the crime. *Mullaney v. Wilbur,* 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975); *State v. Roberts,* 88 Wn.2d 337, 562 P.2d 1259 (1977). The State, by its information, charged the defendants with *willfully,* unlawfully, and feloniously possessing a controlled substance. The use of the word willful was unnecessary, and by a proper motion could have been

stricken from the information as surplusage. *See State v. Holt,* 52 Wn.2d 195, 324 P.2d 793 (1958). However, if the court, at the request of the State's attorney, proceeds to incorporate the unnecessary element in the instructional language, as it did in instructions Nos. 3 and 4, thereby making willfulness an element of the crime, then the State has assumed the burden of proving the possession was willful.[1] This is especially true when, as in instruction No. 3, the collective term "willfully, unlawfully and feloniously" is defined to be intentionally and purposely, and not accidentally. At this point, an instruction such as No. 9 becomes confusing. The presumption instruction standing alone might be supported on the theory that mere possession is the only element that need be established under RCW 69.50.401(c). Possession is unlawful. That the possession was unwitting is a matter of defense which the defendant may be required to raise by evidence sufficient to create a reasonable doubt in the minds of the jury. *See State v. Boyer,* 19 Wn. App. 338, 576 P.2d 902 (1978). However, when the instructions are read as a whole, this instruction appears to create a presumption which relieves the State of its self–inflicted burden of proving the element of willfulness. This instruction is distinguishable from the one involved in *State v. Boyer, supra,* because in *Boyer* the instruction specifically included the element of willfulness and impressed upon the jury that the State had a continuing burden to prove willfulness. That is not so in this case.

---

[1] Instruction No. 3 reads:

"As used in the Information in said cause and in these instructions, 'wilfully, unlawfully and feloniously' means intentionally and purposely, but not accidentally, and without and beyond the authority of law."

Instruction No. 4 reads:

"To convict the defendants, TERRY LEE WORLAND and HAROLD LOWELL O'FLAHERTY, or either of them, of the crime of Unlawful Possession of a Controlled Substance, as charged in the Information herein, the State must prove to you beyond a reasonable doubt:

"1. That on or about the 20th day of March, 1976, the defendant did willfully, unlawfully and feloniously have in his possession a·controlled substance, to–wit: Barbiturates.

"2. That said possession occurred in Thurston County, Washington.

In *Roberts*, our Supreme Court listed three tests which must be satisfied before a presumption which aids the State in establishing an element of a crime is valid. The first is that the presumption must not alter the ultimate burden of persuasion by proof beyond a reasonable doubt. The burden must always remain with the prosecution. *Mullaney v. Wilbur, supra; State v. Kroll,* 87 Wn.2d 829, 558 P.2d 173 (1976). The second requires that the presumption operate only when the fact presumed follows from the facts proven beyond a reasonable doubt. *State v. Odom,* 83 Wn.2d 541, 520 P.2d 152 (1974); *State v. Alcantara,* 87 Wn.2d 393, 552 P.2d 1049 (1976). The final requirement is that the instruction contain limiting language from *State v. Person,* 56 Wn.2d 283, 352 P.2d 189, 81 A.L.R.2d 1088 (1960), explaining the operation of the presumption. The instruction must tell the jury that the presumption is not binding even if unrebutted by the defendant and the State must still prove a guilt beyond a reasonable doubt. Here, the instruction contained no cautionary language as required by *Person* and *Roberts*. Thus, this instruction violates due process and the convictions of both defendants must be reversed.

One further assignment of error requires consideration. O'Flaherty challenges the sufficiency of the evidence on the ground that he was charged with "willfully" possessing a controlled substance and the State presented no evidence that his possession was willful. We believe that this assignment of error is well taken. It was not necessary for the State to charge "willful" possession under RCW 69.50.401(c) which makes mere possession, without more, a felony. But having done so, and then offering instructions on willfulness, the State assumed the additional burden of proving willfulness as an element of the crime. Inasmuch as

---

"If you find beyond a reasonable doubt that each and every one of the above elements of the crime of Unlawful Possession of a Controlled Substance has been proven, then you must convict the defendants or either of them of that crime. On the other hand, if you have a reasonable doubt as to any one of the above elements, then and in that event you must acquit the defendants or either of them of this charge."

the State never attempted to amend the information to conform to the proof, O'Flaherty's motion to dismiss for insufficient evidence should have been granted. The evidence permits no inference that O'Flaherty's possession of barbiturates was willful; on the contrary, it strongly suggests lack of knowledge on his part.

The evidence at trial showed that while O'Flaherty and Worland were roommates, O'Flaherty attempted to prohibit drugs in the room. There had been a prior incident in which he became extremely angry at Worland because Worland had brought drugs into the room. On the night in question, O'Flaherty had been absent from the room from around 8:30 in the evening until after 2 in the morning, but Worland remained in the hotel and had been seen attempting to inject drugs. When O'Flaherty arrived home, he found Worland in pain and learned that he had broken the needle off in his arm. After being assured that Worland had not been using drugs in their room, and failing in his efforts to assist Worland, O'Flaherty went to sleep. At approximately 7 a.m., O'Flaherty's brother arrived and asked him to go visit some friends. O'Flaherty was awake in the room only long enough to dress. He did not return until 12:30 that afternoon. At that point, Worland's condition had worsened and O'Flaherty called Medic I. Thus, O'Flaherty was only in the room for a very short time and his opportunity to discover the presence of the drugs was limited. Moreover, the drugs were not found in conspicuous places. The spoons which contained mere traces of barbiturates were found in the kitchen sink; this is hardly a suspicious circumstance which would lead O'Flaherty to know he was in possession of barbiturates. The capsules were in a closed medicine cabinet which he did not open. We infer from the record that the marijuana was not located in the same place as the barbiturates. When these circumstances are considered in connection with Worland's assurance that he had used the drugs in another room, we believe the State failed to prove O'Flaherty's possession was willful. On

these facts, we believe O'Flaherty's conviction must be reversed.

As to Worland, the evidence is overwhelming that he willfully possessed barbiturates, and he does not seriously contend otherwise. By his own admission, he injected drugs in another room. During the evening he moved between that room and his own. It is not difficult to draw an inference that he willfully possessed the drugs in question.

We find no merit in defendants' other assignments of error. Judgment reversed as to O'Flaherty and reversed and remanded for new trial as to Worland.

PETRIE, J., concurs.

REED, A.C.J. (dissenting)—I must respectfully dissent. Instruction No. 9 may not be the model of perfection, but I doubt it tended to take the jury off course. In *State v. Boggs,* 57 Wn.2d 484, 358 P.2d 124 (1961), our Supreme Court approved an almost identical instruction; it did not include a reference to "unwitting." In *State v. Morris,* 70 Wn.2d 27, 422 P.2d 27 (1966), the court again approved a more succinct version, stating as follows at pages 34-35:

> The state had the burden of proving beyond a reasonable doubt that the appellant, on or about the times fixed in the information, had possession of the marijuana cigarettes. When possession was thus proved, it became a matter of defense, a burden resting on the appellant, to show to the satisfaction of the jury that his possession of the drug was either unwitting, or authorized by law, or acquired by lawful means in a lawful manner, or was otherwise excusable under the statute. [RCW 69.33.390.] Of course, the burden of showing such defenses to the charge of possession did not in any way deprive the appellant of his defenses either of want of possession or that the evidence failed to show beyond a reasonable doubt such possession.

The majority appears to say that, because instruction No. 3 defines the collective term "willfully, unlawfully and feloniously" and because instruction No. 9 refers to "unwitting" possession—a defense to a claim of "willful"

possession—the State has improperly shifted to defendants the burden of disproving "willfulness." This is where the majority and I differ.

I do not agree that, where the prosecution has mistakenly assumed the burden of proving the existence of an element which is not necessary for proof of the crime charged, that any *constitutional right* of the defendant is violated by giving the prosecution the aid of a presumption in carrying that additional burden. I read *Mullaney v. Wilbur,* 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975) and *State v. Roberts,* 88 Wn.2d 337, 562 P.2d 1259 (1977) as condemning only those presumptions which improperly aid the State in proving a necessary element of the crime charged.

In the instant case that means that no constitutional right of the defendants would be violated by an instruction to the jury that "willfulness" may be presumed to follow once the fact of possession is proved. This is so because "willfulness" is not an element of the crime of merely possessing controlled substances. *State v. Vindhurst,* 63 Wn.2d 607, 388 P.2d 552 (1964); *State v. Boggs, supra; State v. Hennings,* 3 Wn. App. 483, 475 P.2d 926 (1970). I fail to see how the State's error can expand upon a defendant's constitutional right, or how defendants can complain when the State has carried its burden of proving beyond a reasonable doubt all the true elements of the crime charged.

I also disagree with the majority's conclusion that the State did not adequately carry its increased burden of proving "willfulness." Albeit the evidence was slight on this issue, it was uncontradicted that O'Flaherty knew of Worland's propensity for bringing drugs into the room which the two shared. The drugs in evidence were found in portions of the premises open to and under control of both defendants. The jury did not have to believe either defendant's version. On a challenge to the sufficiency of the evidence the State was entitled to the reasonable inference that O'Flaherty knew of and condoned the presence of such drugs in his room. *State v. Randecker,* 79 Wn.2d 512, 487

P.2d 1295 (1971). I believe the State successfully carried its extra burden. I would affirm.