[No. 47267-4-I. Division One. September 16, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL E. GREATHOUSE, *Appellant*.

894

*Jason B. Saunders* (of *Washington Appellate Project*), for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Lynn S. Prunhuber, Deputy,* for respondent.

KENNEDY, J. — Michael Greathouse was convicted by a jury of 14 counts of theft, 14 counts of trafficking in stolen

property, and 1 count of evading a special fuel tax. The State concedes, and we agree, that the convictions for trafficking in stolen property must be reversed because the Criminal Profiteering Act, chapter 9A.82 RCW, enacted in 1985, included a 10-year termination provision and the Legislature's attempt to repeal the termination provision was void on constitutional grounds; thus, Greathouse was charged and convicted of a crime that did not exist. But we reject Greathouse's contentions that his convictions of theft must also be reversed because (1) the information was fatally defective for failing to state all the essential elements of theft, (2) the evidence was insufficient to prove theft, (3) his constitutional right to a unanimous jury was violated when the trial court failed to give a unanimity instruction and the State failed to elect specific acts of theft to support the 14 counts, and (4) the trial court erred by admitting evidence that Greathouse failed to report the money he obtained by selling stolen fuel on four out of five of his federal income tax returns. We also reject Greathouse's contention that the trial court exceeded its statutory authority by imposing a penalty for fuel tax evasion for a period beyond that permissible under the applicable statute of limitations. Accordingly, we reverse the convictions for trafficking in stolen property, affirm the convictions for theft, and affirm the fuel tax evasion penalty.

## FACTS

Michael E. Greathouse worked as a tank truck driver for Dennis Petroleum, a major distributor of petroleum in the greater Seattle area. Greathouse delivered fuel to various large-volume customers, including Alaska Marine Lines, Boeing, the Port of Edmonds, Magnolia Unocal, Associated Sand and Gravel, and Petrocard Systems. Although some of these customers could measure with precision the amount of fuel they received, others could not, particularly Alaska Marine Lines, Boeing, and Associated Sand and Gravel.

From 1992 to 1996, Greathouse also used the Dennis Petroleum truck to deliver fuel to Gaston Brothers Excavating, Inc. However, Gaston Brothers was not a Dennis Petroleum customer, and Greathouse was authorized by Dennis Petroleum to deliver fuel only to its customers. Gaston Brothers purchased about 600 gallons of fuel per delivery from Greathouse at $0.60 cents a gallon, half the normal price. Between 1992 and 1996, Gaston Brothers paid Greathouse $169,530 for fuel.[1] Gaston Brothers paid for the fuel with checks made payable to Michael Greathouse, not to Dennis Petroleum. Greathouse did not provide invoices for the fuel or receipts for payment from Gaston Brothers. Greathouse cashed these checks, in contrast to his legitimate paychecks from Dennis Petroleum, which he deposited into his bank account. The special fuel tax that was due on Greathouse's sales of fuel to Gaston Brothers was not paid.

From 1992 to 1995, Greathouse failed to report any of the payments he received from Gaston Brothers on his federal income tax returns. However, on his 1996 federal tax return, signed after charges had been filed in this case, Greathouse reported $34,710 in additional income for 1996, as net profit from self-employment. Gaston Brothers actually paid him $34,970 in 1996.

The Dennis Petroleum fuel truck that Greathouse drove was a five-compartment tractor-trailer unit. The two compartments in the truck and the three compartments in the trailer could be loaded and unloaded all at once or separately. When the truck was loaded to its legal weight limit, there was still extra volume in the truck and trailer compartments.

The State presented circumstantial evidence that Greathouse accumulated the fuel he sold to Gaston Brothers either by loading the tanker truck he drove beyond its legal weight limit, or by "short-dropping" deliveries to those

---

[1] At $0.60 per gallon, the $169,530 paid to Greathouse over a five-year period means that he sold at least 282,550 gallons to Gaston Brothers, an average of 4,700 gallons per month.

of Dennis Petroleum's customers that were unable to accurately measure the amount of fuel delivered, including Alaska Marine Lines, Associated Sand and Gravel, and Boeing. To short-drop, the driver does not open a valve on one of the fuel compartments, or anticipates when that compartment is half empty and shuts the valve off. The fuel that a driver short-drops can come from more than one load. The driver can short-drop a series of customers, build up a volume in one of the compartments, and then unload the collected diesel at an unauthorized location. Because Dennis Petroleum had very poor controls over its own fuel inventory, a driver could also load more than the legal weight limit into the truck and trailer compartments, make his scheduled deliveries in the amounts that had been ordered, and then unload the excess at an unauthorized location.

In mid-November 1996, Lt. Mark Couey of the Washington State Patrol began an investigation of Greathouse's untaxed fuel deliveries to Gaston Brothers Excavating, Inc. Lieutenant Couey obtained a search warrant, went to Gaston Brothers unannounced, and seized various company documents and records, including the company's bookkeeping computer. Lieutenant Couey learned that Gaston Brothers purchased approximately 70 percent of its fuel from Michael Greathouse. When interviewed by Washington State Patrol detectives, Greathouse made a series of contradictory exculpatory statements. First he said that he never delivered any fuel in unscheduled deliveries, but just transferred some fuel using his pump truck six or seven times, making just $60 or $70 under the table. When shown carbon copies of five checks payable to him in 1996 from Gaston Brothers, he said it was for framing or construction work he did on the side. When shown a sixth check, with the memo line covered, Greathouse again said it was for framing. However, the check memo line noted "fuel."

Upon learning of the situation, Paul Dennis of Dennis Petroleum told several of the company's large-volume customers that they might not have received all of the fuel they

had paid for, and offered to reimburse them for missing fuel. However, because those customers most likely to have been short-dropped were the ones lacking accurate fuel measuring devices, none of them could tell whether they had been short-dropped, and if so by how much. Consequently, none of them submitted a claim for reimbursement.

On September 15, 1999, the State charged Greathouse and Gary Gaston, the owner of Gaston Brothers Excavating, Inc., with 1 count of theft in the first degree, 13 counts of theft in the second degree, 14 counts of trafficking in stolen property in the first degree, and 1 count of evading a special fuel tax. By amended information, the State added Gaston Brothers Excavating, Inc., as a defendant to the fuel tax evasion charge, and added one count of conspiracy to commit theft in the first degree against all three defendants.

The jury deadlocked, and was unable to reach a verdict against Gary Gaston or his company as to any of the counts with which they were charged. The jury found Greathouse guilty of all counts of theft, trafficking, and evasion of a special fuel tax, but was unable to reach a verdict on the count charging criminal conspiracy to commit theft in the first degree.

The trial court sentenced Greathouse within the standard range, and imposed a penalty of $38,640 for the full amount of the special fuel taxes evaded during the charging period, January 1992 through December 1996. Greathouse filed a motion for a new trial, which was denied. Greathouse appeals.

## DISCUSSION

### 1. Trafficking in Stolen Property

Greathouse argues that he could not be prosecuted for trafficking in stolen property because the Legislature's attempt to repeal the 10-year termination provision of the criminal profiteering act was invalid, and the crime no longer existed. The State properly concedes that

Greathouse is correct. This issue was addressed directly in *State v. Thomas*, 103 Wn. App. 800, 14 P.3d 854 (2000), *review denied*, 143 Wn.2d 1022 (2001). The criminal profiteering act contained a provision that the act would terminate 10 years after its enactment; thus the act was due to terminate effective July 1, 1995. In 1995, the Legislature attempted to repeal the 10-year termination provision as part of an act entitled " 'AN ACT relating to insurance fraud.' " *Id.* at 805-06. The *Thomas* court held that the attempted repeal of the termination provision of the criminal profiteering act violated both the single-subject and the subject-in-title provisions of the Washington State Constitution; therefore, the Criminal Profiteering Act (with a few minor exceptions for insurance fraud) terminated effective July 1, 1995. *Id.* at 810-14.

Greathouse was charged with 14 counts of trafficking in stolen property in violation of RCW 9A.82.010 and 9A.82.050. These statutes were part of the Criminal Profiteering Act that were not rationally related to insurance fraud, and were no longer in effect when Greathouse was charged on September 15, 1999. Accordingly, we accept the State's concession of error, reverse Greathouse's convictions for trafficking in stolen property (counts 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 26, and 28) and remand for dismissal of these counts with prejudice.

2. Sufficiency of Information

█ █ A defendant has a constitutional right to be informed of the nature and cause of the charges against him. WASH. CONST. art. I, § 22; U.S. CONST., amend. VI. When an information omits a statutory element of a charged crime, it is constitutionally insufficient because it fails to state an offense. *State v. Holt*, 104 Wn.2d 315, 320-21, 704 P.2d 1189 (1985). Under the "essential elements" rule, a charging document must allege facts supporting every element of the offense, in addition to adequately identifying the crime charged. *State v. Leach*, 113 Wn.2d 679, 689, 782 P.2d 552 (1989). "The primary goal of the 'essential elements' rule is to give notice to an accused of the nature of the crime that

he or she must be prepared to defend against." *State v. Kjorsvik*, 117 Wn.2d 93, 101, 812 P.2d 86 (1991). Merely reciting the statutory elements of the charged crime may not be sufficient. *Leach*, 113 Wn.2d at 688.

■■ If an information is not challenged until appeal, as is so in this case, the appellate court evaluates the sufficiency of the information under a two-prong test: (1) an inquiry into whether the charging document contains the crime's essential elements and, if so, (2) an inquiry into whether there was nevertheless actual prejudice caused by unartful drafting of the charging document. *Kjorsvik*, 117 Wn.2d at 105-06. The "essential elements" prong involves an inquiry as to whether the necessary facts appear in any form, or by fair construction can be found in the charging document. *Id*. at 106. The "actual prejudice" prong involves an inquiry into whether the defendant can show that he or she was nonetheless actually prejudiced by the unartful language in the information. *Id*. Only if the reviewing court determines that the information contains the essential elements of the crime charged may the court reach the actual prejudice prong of the test. *State v. Simon*, 64 Wn. App. 948, 956, 831 P.2d 139 (1991), *aff'd in part, rev'd in part on other grounds*, 120 Wn.2d 196, 840 P.2d 172 (1992). Where the information is not challenged until appeal, the reviewing court will liberally construe the information in favor of validity. *Id*.

■ Pointing to dicta in *State v. Lee*, 128 Wn.2d 151, 159, 904 P.2d 1143 (1995), Greathouse argues that Washington courts require that the victim be named in an information charging theft. He also contends that the information in this case fails both prongs of the *Kjorsvik* test because it did not name the victim of the thefts or allege the true owner of the fuel, thereby making it impossible to prepare an adequate defense.

Count 1 of the information is representative of the charging language for each of the theft counts. It states:

And I, Norm Maleng, Prosecuting Attorney aforesaid further do accuse MICHAEL E. GREATHOUSE and GARY L.

GASTON, and each of them, of the crime of **Theft in the Second Degree**, committed as follows:

That the defendants, MICHAEL E. GREATHOUSE and GARY L. GASTON, and each of them, in King County, Washington, on or about September 16, 1996, with intent to deprive another of property, to wit: approximately 2,033 gallons of diesel fuel, did exert unauthorized control over such property belonging to another, that the value of such property did exceed $250;

Contrary to RCW 9A.56.040(1)(a), 9A.56.020(1)(a) and 9A.08.020, and against the peace and dignity of the State of Washington.

Clerk's Papers at 1-2. Thus, the information charged Greathouse (and Gaston as his accomplice) with theft by means of embezzlement. See RCW 9A.56.010(19)(b) ("exerts unauthorized control" means "[h]aving any property or services in one's possession, custody or control as bailee, factor, lessee, pledgee, renter, servant, attorney, agent, employee, trustee, executor, administrator, guardian, or officer of any person, estate, association, or corporation, or as a public officer, or person authorized by agreement or competent authority to take or hold such possession, custody, or control, to secrete, withhold, or appropriate the same to his or her own use or to the use of any person other than the true owner or person entitled thereto[.]")

In *Lee*, the court said:

[I]n cases of theft and larceny proof of ownership of the stolen property in the specific person alleged is not essential. The State is required to prove only that it belonged to someone other than the accused.

. . . .

The name of the victim, however, is not superfluous in a theft case . . . . Though not a necessary element of a theft instruction, allegations of ownership must be sufficiently stated in an information to establish that the property was not that of the accused, to protect the accused against a second prosecution for the same crime, and to avoid misleading or embarrassing the accused in the preparation of his or her defense. The names of

the owners of stolen property constitute no part of the offense and are stated in the information primarily as a matter of description for the purpose of identification and to show ownership in a person or persons other than the accused.

*Lee*, 128 Wn.2d at 159-60 (citations omitted).

The information in *Lee* named two alleged victims of the theft, and the sufficiency of the information was not at issue; rather, the defendant challenged the sufficiency of the "to convict" instruction, the absence of a unanimity instruction regarding the victim's identity, and the sufficiency of the evidence. Accordingly, *Lee* does not stand for the proposition that an information that fails to state the name of the owner of the stolen property is constitutionally deficient. The *Lee* court remarked in passing that

[i]n some jurisdictions, an information that fails to allege ownership in the person from whom it is charged the property was taken may be amended, and the accused may be brought to trial on the amended information. In other jurisdictions, an information may omit any allegation of ownership, provided the accused may request a bill of particulars.

*Id.* at 160 (citations omitted). The *Lee* court was not required to decide, and did not decide, into which of these categories Washington falls.

Still not directly on point with respect to the sufficiency of an information charging theft, but closer to the mark than *Lee*, is *State v. Holt*, 52 Wn.2d 195, 324 P.2d 793 (1958). There, the information charged that the defendant, who was the manager of the State's surplus property warehouse, converted "property of the United States" to his own use, with intent to deprive and defraud the owner thereof. *Holt*, 52 Wn.2d at 196. The proof at trial established that the property at issue belonged either to the United States or to some eligible donee that had returned the property to the warehouse. The defendant challenged the sufficiency of the evidence to convict him of the crime as charged, since the prosecution was unable to prove the actual owner of the

stolen property. The court held that the evidence was sufficient to convict the defendant of the crime with which he was charged for two reasons, the first of which was that

> [t]he phrase, "the property of the United States," as it appears in the information, is surplusage and immaterial. Delete it and the information remains sufficient to charge the crime of larceny under RCW 9.54.010(3), because it still alleges that the conversion of property was done with "intent to deprive or defraud the owner thereof."

*Id.* at 198. Although the *Holt* court was addressing the sufficiency of the evidence at trial to prove embezzlement as charged, and not the sufficiency of the charging document itself, the court's reasoning indirectly supports the proposition that, in Washington, an information charging theft by embezzlement need not name the owner of the stolen property, so long as it clearly charges that the defendant, on or about a specific date, with intent to deprive the owner thereof, exercised unauthorized control over specifically described property of another.

This proposition was confirmed by the Supreme Court in *State v. Easton*, 69 Wn.2d 965, 422 P.2d 7 (1966). There, the court squarely addressed the question of whether the owner or possessor of stolen property must be named in the information. The information in *Easton* charged that the defendant did

> wilfully, unlawfully and feloniously, with intent to deprive and defraud the owner thereof, receive into his possession, conceal and aid in concealing and withholding property wrongfully appropriated and stolen, knowing the same to have been so wrongfully appropriated and stolen, to-wit: Social Security Insurance Check No. 46,917,768, dated August 3, 1965, in the amount of Ninety-five Dollars ($95.00), and the property of and belonging to another.

*Id.* at 966. On appeal, the defendant claimed that the information did not state a crime, in that the owner or possessor of the check was not alleged in the information. The court held to the contrary: " 'It is not necessary under our code or under any system of pleading to allege in the

indictment for larceny in whose possession the property is, but it is sufficient to allege and prove that the property stolen was the property of another.'" *Id.* at 967 (quoting *State v. Coss*, 12 Wash. 673, 675, 42 P. 127 (1895)).

In response to the further argument that the owner of stolen property must be named in the information to enable the accused to raise a plea in bar of subsequent prosecution for the same offense, the *Easton* court said:

> "The cases holding that it is necessary to allege ownership in charging the crime of receiving stolen property, and there are many such cases, are based not upon the idea that ownership is an essential element of the crime, but that an allegation of ownership is necessary as a matter of description; that the transaction is identified not only by a description of the property, but also by the ownership; that [the] identity of the property embraces the element of ownership as a necessary part of the description. The fundamental reason upon which these cases seem to be based is that the information or indictment must upon its face so completely identify the transaction that a judgment of conviction or acquittal would constitute a bar to a subsequent prosecution for the same offense. In view of the rule permitting parol evidence to be introduced for the purpose of identifying the offense where a plea of former jeopardy is interposed, this reason loses much of its force. These cases hold also that, if the name of the owner is unknown, an allegation to that effect will excuse the failure to state ownership. It is difficult to see how an allegation that the owner is unknown would in any manner tend to identify the offense for any purpose. Manifestly it would not furnish the accused any useful information nor assist him in the preparation of his defense; and if the judgment subsequently should be pleaded in bar of another prosecution, the identity of the offense would have to be established by looking to other descriptive allegations or by resorting to oral testimony."

*Id.* at 968-69 (quoting *State v. Martin*, 94 Wash. 313, 316, 162 P. 356 (1917)).

Nothing in *Lee* contradicts the reasoning of the *Easton* court. And nothing in *Easton* contradicts the reasoning of the court in *Kjorsvik*. Certainly the easiest and clearest way

to protect the accused against a second prosecution for the same crime, and to avoid misleading or embarrassing the accused in the preparation of his or her defense, would be to name the owner of the allegedly embezzled property or the victim of the alleged theft by putting in the information. However, failure to do so does not invalidate the information or render it constitutionally insufficient. We agree with the State that the information in the instant case contains all of the required elements of the crime of theft by embezzlement, in that each count specified the date and place of the crime, the number of gallons of fuel alleged to have been converted on that date, the value of the fuel, the allegation that the fuel belonged to another, and the allegation that Greathouse exerted unauthorized control over the fuel with intent to deprive another of that value.

By its statutory definition, "exerts unauthorized control" means that one who holds possession, custody, or control of property of another by virtue of a position of trust (such as that of attorney, agent, or employee) violates that trust by converting the property to his or her own use or the use of any person other than the true owner or person entitled thereto. *See* RCW 9A.56.010(19)(b); *State v. Ager*, 128 Wn.2d 85, 91, 904 P.2d 715 (1995) ("[u]nlike theft by taking, embezzlement involves a violation of trust and does not require proof of intent to permanently deprive the owner of the property taken."). The information in this case adequately informed Greathouse that he was required to defend against the charge of having embezzled (exerted unauthorized control over) fuel that he possessed in a position of trust, that is, that he was required to defend against multiple counts of embezzlement, not multiple counts of theft by taking. *See* RCW 9A.56.010(19)(a) (defining "wrongfully obtaining" as "[t]o take the property or services of another"). The information in this case passes the first prong of the *Kjorsvik* test.

■ Regarding the second prong of the *Kjorsvik* test, it is true that the information would have been improved had the State specified its theory that Dennis Petroleum was

the owner of the fuel. However, while Greathouse asserts that he was actually prejudiced because the State's failure to specify a victim hindered his ability to prepare an adequate defense, he does not explain how his defense might have differed in light of that information. Greathouse's defense at trial was that the State was unable to show that anyone, including Dennis Petroleum, had actually lost any fuel. Had the State specified an owner of the fuel in the information, the defense would be essentially the same: that the State failed to show that the specified owner lost any fuel. Moreover, as we have noted, the information clearly charged Greathouse with embezzlement, not theft by taking. Only one entity placed fuel under Greathouse's custody, possession, or control in a position of trust: his employer, Dennis Petroleum. Moreover, the State's theory of the case was spelled out in detail in the declaration of probable cause. Greathouse could have but apparently did not request a bill of particulars. Greathouse was charged with embezzlement, not theft by taking, and the only possible entity he could have embezzled was his employer, not the customers of his employer. We reject his conclusory and unsupported argument that the State's failure to specify the owner of the fuel in the information caused him actual prejudice. The information passes the second prong of the *Kjorsvik* test.

3. Sufficiency of the Evidence

■■ The State has the burden of proving each element of the crime charged beyond a reasonable doubt. *City of Seattle v. Gellein*, 112 Wn.2d 58, 62, 768 P.2d 470, 775 P.2d 448 (1989). On a challenge to the sufficiency of the evidence, the appellate court decides whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). All reasonable inferences "must be drawn in favor of the State and interpreted most strongly against the defendant." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim

of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id.*

Greathouse was charged with 1 count of theft in the first degree and 13 counts of theft in the second degree. As we have already discussed in the preceding section, Greathouse was charged with exerting unauthorized control over the fuel he sold to Gaston Brothers, that is, he was charged with theft by embezzlement, not with theft by unlawful taking. The "exerts unauthorized control" theft alternative includes what was referred to as "embezzlement" under prior law. *State v. Joy*, 121 Wn.2d 333, 339, 851 P.2d 654 (1993). To prove theft by embezzlement in the first or second degree, the State must prove the following elements beyond a reasonable doubt: (1) that on or about the [date] the defendant exerted unauthorized control over property of another, (2) that the property exceeded $1,500 in value (for first degree theft) or $250 (for second degree theft), (3) that the defendant intended to deprive the other person of the property, and (4) that the acts occurred in the state of Washington. 11A WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 70.02, 70.06, at 38, 42 (2d ed. 1994).

Greathouse contends that the State erroneously aggregated a series of individual transactions to meet the dollar threshold necessary to prove first and second degree theft. This argument is rooted in his assertion that the victims of the alleged thefts, and the owners of the fuel, were the customers who had been short-dropped, not his employer, Dennis Petroleum. According to Greathouse, although the fuel originally came from Dennis Petroleum, the customers who paid for the fuel but did not receive it became the owners of the fuel and the victims of the theft. Greathouse claims that the State argued this theory at trial in attempting to show that he could have stolen fuel from a number of victims on any given date, even though the State could not prove that any particular entity lost any fuel at all. Therefore, he argues, the State improperly aggregated a series of thefts from a variety of potential victims on a given date in order to achieve a certain dollar threshold for

charging first or second degree theft. Aggregation of individual transactions to meet the threshold for a particular degree of theft is allowed by common law and statute; however, aggregation is not allowed if the thefts stem from different victims at different times and places. *State v. Atterton*, 81 Wn. App. 470, 472, 915 P.2d 535 (1996).

The State replies that Greathouse misconstrues its theory of the case. The State argues that Greathouse committed theft by exertion of unauthorized control—embezzlement—of diesel fuel belonging to Dennis Petroleum. The State elicited testimony that Dennis Petroleum owned the fuel in its delivery trucks, that Dennis Petroleum had control over and responsibility for the fuel, and that Greathouse had no authority to sell Dennis Petroleum's fuel to Gaston Brothers, an unauthorized recipient. The State also provided circumstantial evidence that Greathouse stole Dennis Petroleum's fuel by short-dropping some of its customers and selling the fuel to Gaston Brothers. According to the State, its discussion of which customers were short-dropped on the dates charged in the information was not an assertion that those customers owned the fuel. Rather, the State used that evidence to demonstrate that certain customers lacked the ability to accurately measure their fuel, thereby creating the opportunity for Greathouse to embezzle the fuel owned by Dennis Petroleum. Because there was only one act of exertion of unauthorized control over the amount of fuel referred to in each of the charged theft counts—the delivery of Dennis Petroleum's fuel to Gaston Brothers, an unauthorized recipient—there was no aggregation.

The record substantiates the State's version of its theory at trial. The State argued to the jury:

> So, Mike Greathouse is the employee of Dennis Petroleum and when he has diesel fuel in a Dennis Petroleum truck tank, he has control of that as an employee.
>
> And what did Paul Dennis testify about this? Paul Dennis testified that Dennis Petroleum owned the diesel fuel that was being transported in Dennis Petroleum trucks, that Dennis

Petroleum had possession of it, that they had an interest in it and they had control over it. If something happened to that fuel in the middle of the trip, if it spilled on the highway, Dennis Petroleum was responsible. And that without the consent of Dennis Petroleum, that Mike Greathouse couldn't do anything with that fuel, that he was only authorized to deliver it to the customer who was listed on the driver delivery reports. That was the only thing Mike Greathouse was authorized to do with it. He was not authorized to do anything else with it.

So then when you look at the definition of owner here, a person other than the actor who has [possession] of or any other interest in the property involved and without whose consent the actor, Mike Greathouse, has no authority to exert control over the property, Dennis Petroleum is the owner of all of the fuel.

Now, it doesn't matter here. It doesn't matter here that the people who were ultimately shorted were the customers. According to the legal definition and the testimony you have heard, Dennis Petroleum was the owner of that fuel while it was in the Dennis Petroleum trucks which is when Mike Greathouse made those deliveries to Gaston Brothers and Gary Gaston.

8 Report of Proceedings at 28-29.

The defendants attempt because it hasn't been possible for anybody, either Paul Dennis or Alaska Marine Lines or Associated Sand and Gravel or anybody else, to tell you precisely which customers of Dennis Petroleum paid for what amounts of fuel they got. They are saying that means it's not stolen. That's not correct.

Let me, first of all, clarify one thing. What the State said was that the customers who got shorted, who were short dropped, and the procedure for that was described by Paul Dennis. The customers who were short dropped were most probably Alaska Marine, Associated Sand and Gravel and Boeing. And—but that doesn't mean that they are the only people or that they are the people who are properly termed victims because you are—you need to look to the jury instructions, to the jury instructions regarding ownership that I went over in the first part of my opening statement, to determine who is an owner and who it is without whose permission or control Mike

Greathouse can't do anything with that diesel fuel. It's very clear from the Court's instructions that Dennis Petroleum is an owner. Now, ultimately it is very clear as a matter of fact that Dennis Petroleum was not out the money that these other customers were out the money because they paid the full amount for this.

But the defense is basically asking you to either use sympathy for the defendants or prejudice against the State to ignore the instructions of the Court and when it focuses on saying you don't have a victim, because according to the instructions of the Court and the evidence that is presented, you do have an owner of the property who was deprived of the property, commonly known as a victim.

*Id.* at 161-62.

While it is true that the information and the jury instructions did not specify an owner or a victim, there is nothing in the instructions that is inconsistent with the State's embezzlement theory or that might have led the jury to believe that the State had charged multiple acts of theft from multiple victims in a single count. The jury was instructed with respect to the law defining embezzlement, and not the law with respect to theft by wrongfully obtaining. Because there was only one act of exertion of unauthorized control over fuel charged in each theft count—the delivery of Dennis Petroleum's fuel to Gaston Brothers— there was no improper aggregation of fuel stolen from various customers who may have been short-dropped on that same date, in order to escalate the crime into the felony category of first or second degree theft.[2]

Moreover, Dennis Petroleum does meet the statutory definition of an "owner" of the fuel. Under RCW

---

[2] We note in passing that the so-called "single-larceny" doctrine is an exception to the general rule that thefts from different victims at different times and places cannot be aggregated to make one grand larceny out of several petit larcenies. Where successive takings from several victims are pursuant to a single scheme, the takings may, by the great weight of authority, be aggregated. Whether there has been one scheme or course of conduct so that the value of various items stolen should be aggregated is a question for the jury. 2 WAYNE R. LAFAVE & AUSTIN W. SCOTT, SUBSTANTIVE CRIMINAL LAW § 8.4, at 353-54 n.28 (1986 and Supp. 2002 n.29).

9A.56.010(9), an "owner" means "a person, other than the actor, who has possession of or any other interest in the property or services involved, and without whose consent the actor has no authority to exert control over the property or services."

Greathouse nevertheless suggests that Dennis Petroleum could not have owned the stolen fuel, because the short-dropped customers who paid for the fuel but did not receive it became the owners of the fuel and the victims of the crimes. There are two problems with this argument. First, under the Uniform Commercial Code, "[u]nless otherwise explicitly agreed *title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods.*" RCW 62A.2-401(2) (emphasis added). Therefore, title to the stolen fuel arguably did not pass to the short-dropped customers, even though they paid for it, because the seller, through its employee Greathouse, did not complete its performance by physically delivering the goods. Second, RCW 9A.56.010 (9) does not specify that *title* to the goods must be vested in the "owner." Under the State's embezzlement theory, Dennis Petroleum was the "owner" of the fuel because it had possession of the fuel while it remained in the Dennis Petroleum truck; it had an interest in delivering the fuel to its authorized customers; and it did not authorize Greathouse to do anything else with the fuel. It could also be said that the short-dropped customers were "owners" because they had a contractual right to receive the full quantity of fuel that they paid for. Under an unlawful taking theory, the short-dropped customers were victims of the thefts. However, the State did not choose to charge and prove the case on that theory. It chose to charge and prove that Greathouse embezzled from his employer.

Although Greathouse's argument is somewhat incoherent because he continues to confuse unlawful taking theory and aggregation of short-dropped fuel from a number of customers with embezzlement theory, he does point out that the State was unable to prove that Dennis Petroleum

lost any fuel or otherwise suffered any financial loss. Although the State was able to show that among the ways Greathouse could have acquired the fuel he sold to Gaston Brothers was to load the fuel truck he drove beyond its legal weight limit, Dennis Petroleum lacked the kind of control over its own inventory to prove that this was a means that Greathouse actually used with respect to any charged or uncharged theft. It is uncontroverted that none of Dennis Petroleum's customers who might have been short-dropped sought reimbursement from the company—because they had no means of knowing whether they had, in fact, been short-dropped and if so by how much. Greathouse points to the following language in *Lee*: "[A] loss to the victim is key in assessing whether an unlawful taking has occurred." *State v. Lee*, 128 Wn.2d 151, 162, 904 P.2d 1143 (1995). The *Lee* court went on to hold that there was insufficient evidence to support Lee's conviction, in that the State failed to prove that any of the three potential victims in that case suffered any loss whatsoever. Followed to its logical conclusion, Greathouse's contention must be that the evidence is insufficient to prove embezzlement because, under *Lee, id.* at 162, "a loss to the victim is key in assessing whether an unlawful taking has occurred" and the State could not prove that Dennis Petroleum suffered any loss, either in terms of fuel that was loaded into the tanker truck in excess of the legal weight limit and then sold to Gaston Brothers, or fuel that was accumulated by means of short-dropping and then sold to Gaston Brothers.

We reject this reasoning, on two grounds. First, as the State points out, the *Lee* court did not conclude that there was no *theft* in that case because no victim suffered a loss. The prosecution's problem in *Lee* was its failure to prove the *value* of the property taken:

> The victim here, if any, was Hanson, the owner of the 7th Street residence. His listing agent testified that he told Lee's real estate agent that "if Mr. Lee was going to occupy the property prior to closing, we needed a written agreement, and the date of move-in. And rent should be charged from that date of move-in until the date of closing." He added that such rent would be paid to Hanson, owner of the property.

Clearly, no such agreement was ever written, and no rent was ever paid. *But the State never referred to Hanson as a victim of Lee's theft, or to the 7th Street property as constituting the subject of the theft.* This may have been due to the fact that the residence was virtually uninhabitable before Lee's family repaired it. The value of property is measured by its market value at the time of the theft. RCW 9A.56.010(12); 2 [WAYNE R.] LaFAVE & [AUSTIN W.] SCOTT[, SUBSTANTIVE CRIMINAL LAW] § 8.4 at 352 [(1986)]. To constitute second degree theft, the taking must be of property or services valued at more than $250. RCW 9A.56.040. Here, the State presented no evidence of the property's rental value when Lee received the $700 check in late June. According to the Lees, however, the residence was without rental value until repairs were completed for well over $700 in early July. Thus, even if Hanson were the victim, the evidence is insufficient to establish that he suffered a second degree theft. *While Lee's actions may constitute theft, the State did not present sufficient evidence to establish that those actions deprived any of the parties of $250 or more in either cash or rental value.* Accordingly, we reverse Lee's theft conviction.

*Id.* at 163-64 (emphasis added; one citation to the record in *Lee* omitted). Thus, the Supreme Court's statement in *Lee* that "a loss to the victim is key in assessing whether an unlawful taking has occurred" is dictum. *Id.* at 162. The court's holding is not that there was no theft because the owner of the rental property suffered no loss. The holding is that the prosecution failed to establish second degree theft because it presented no evidence that the defendant wrongfully obtained property from the owner or any other potential victim worth more than $250.

Here, the value of the fuel that Greathouse sold to Gaston Brothers is not at issue—it had a market value of $1.20 a gallon, although Greathouse sold it to Gaston Brothers for $0.60 a gallon.

Second, we deal here with an embezzlement case. The defendant in *Lee* was charged with theft by taking (wrongfully obtaining) or alternatively, theft by color or aid

of deception. *Id.* at 157.[3] Professor LaFave teaches that, with embezzlement, it is the intent at the time of conversion that is important: "one who converts with a fraudulent intent is none the less guilty of embezzlement although he later decides to return the property and does so." 2 WAYNE R. LAFAVE & AUSTIN W. SCOTT, SUBSTANTIVE CRIMINAL LAW § 8.6, at 380 (1986). *Accord, State v. Moreau*, 35 Wn. App. 688, 692, 669 P.2d 483 (1983) (approving a jury instruction that told the jury that " 'intent to deprive,' as used in these instructions, need not be an intent to permanently deprive. Temporary deprivation is sufficient, within the meaning of the term as it applies to this [embezzlement] charge, and restoration of the property at a later date is not by itself a defense to the crime charged."). *See also United States v. Titus*, 64 F. Supp. 55 (D.N.J. 1946) (army post exchange employee took cigarettes belonging to government, sold them to a civilian at a high price, deposited the low post exchange sales price into the post exchange cash register, and pocketed the difference; fact that employee intended to pay and actually did pay the cost of purchasing cigarettes at the post exchange, so that government suffered no loss, held no defense to embezzlement); *In re Wilson*, 81 N.J. 451, 409 A.2d 1153 (1979) (lawyer who made restitution of client's money that he earlier converted to own use could still be disbarred; it was no less a crime that he always intended to restore the money and did so); *State v. Baxter*, 89 Ohio St. 269, 104 N.E. 331 (1914) (state official used state funds for private purposes but repaid funds before his wrongdoing became known; conviction for embezzlement affirmed); *United States v. Barnes*, 761 F.2d 1026, 1035 (5th Cir. 1985)

---

[3] In the case before us, the prosecutor properly charged Greathouse with theft by embezzlement by using only the "exerts unlawful control" language from RCW 9A.56.020(1)(a). In *Lee*, the prosecutor used the entire phrase "did unlawfully obtain or exert unauthorized control," a practice that we do not recommend where the intention, as was the case in *Lee*, is to charge only theft by taking and not also to charge theft by the alternate means of exerting unauthorized control. The prosecutor in *Lee* could not have intended to charge the defendant with theft by embezzlement; no facts in that case would have supported charging that means of committing theft. Unlike theft by taking, which requires a trespass in the taking, theft by embezzlement involves a violation of trust. *See, e.g., State v. Ager*, 128 Wn.2d 85, 91, 904 P.2d 715 (1995).

(to extent that embezzlement at common law does not require as one of its essential elements proof of an actual property loss by the victim, neither does a prosecution for conversion of government funds under 18 U.S.C. § 641).

We conclude that just as it is no defense to the crime of embezzlement that the perpetrator intended eventually to pay for the property that he or she fraudulently converted to his or her own purposes, and subsequently did so, neither is it a defense that the person who issued a purchase order for the property, and who should have received the property but did not receive it, paid for it in the mistaken belief that it had been delivered to him. By that same token, we conclude that there is no failure of proof in such a case of embezzlement where the prosecution is unable to show that the victim of the embezzlement suffered a financial loss, because yet another victim of the overall larcenous scheme paid for the converted property in the belief that it had been delivered to him, when in fact it was not delivered to him, but instead was delivered by the perpetrator to a third person for his own account and not the account of his employer.

Put in more concrete terms, it is no defense to the charges of embezzlement in this case, and it is not fatal to the sufficiency of the evidence, that the very means by which Greathouse was able to conceal his embezzlement for so many years—short-dropping customers of Dennis Petroleum who could not accurately measure the amount of fuel they received—resulted in there ultimately being no financial loss to Dennis Petroleum. The only reason that there was no such loss was because after the whole scheme was revealed, these customers were not able take advantage of Dennis Petroleum's offer to reimburse them, for the same reason that Greathouse got away with his crimes for so long—they had no means of measuring by how much they had been short-dropped.

As Greathouse would have us construe and apply the language in *Lee*, embezzlement by means of short-dropping one's employer's customers would become the proverbial

perfect crime: There could be no theft by embezzlement because the short-dropped customers could not measure the amount of fuel they lost so as to obtain reimbursement from the employer, thus, the employer ultimately would sustain no loss; there could be no conviction for theft by taking from the customers because they could not measure the amount of their loss; and the short-dropping driver could simply pocket his ill-gotten gains—here, $169,530 over a period of five years—and thumb his nose at the criminal justice system. We do not believe that this is what the Supreme Court intended when it said in *Lee*, 128 Wn.2d at 162, that "a loss to the victim is key in assessing whether an unlawful taking has occurred." We decline to so hold, and reject Greathouse's challenge to the sufficiency of the evidence to convict him of the 14 counts of theft by embezzlement.

4. Jury Unanimity

Where the State alleges multiple acts resulting in a single charge, either the State must elect which act it is relying on as the basis for the charge, or the court must instruct the jurors that they must unanimously agree that a single act has been proven beyond a reasonable doubt. *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984). Where neither alternative is followed, a constitutional error arises stemming from the possibility that some jurors may have relied on one act while other jurors relied on another, resulting in a lack of unanimity on all elements necessary for a conviction. *State v. Kitchen*, 110 Wn.2d 403, 411, 756 P.2d 105 (1988). An error for failing to give a unanimity instruction is of constitutional magnitude and can be raised for the first time on appeal. *State v. Crane*, 116 Wn.2d 315, 325, 804 P.2d 10 (1991).

However, as discussed above, the State did not aggregate multiple acts of theft into a single count. The State proceeded on a theft by embezzlement theory, whereby Greathouse was charged with and tried for exerting unauthorized control over fuel belonging to his employer, Dennis Petroleum. Had the State proceeded on a different theory of the case, such as theft by wrongfully

obtaining property of another, and had the State argued at trial that the owners of the fuel were the customers who were short-dropped, the State would have had aggregation problems unless it could show the applicability of the single-larceny doctrine; thus, there might have been a unanimity issue. However, under the State's embezzlement theory, the act of unauthorized control over the fuel occurred when Greathouse delivered the short-dropped fuel to Gaston Brothers, an unauthorized recipient. Each count of theft charged arose from Greathouse's delivery to Gaston Brothers on a particular day. The prosecutor specified in closing arguments that Dennis Petroleum was the owner of the fuel and the victim of the thefts—and could not have done otherwise consistent with the fact that Greathouse had been charged with and was being tried for theft by embezzlement from his employer. We hold that there was only one distinct act of theft for each count, and that a unanimity instruction was not required.

5. Federal Income Tax Returns

Greathouse argues that the trial court abused its discretion by admitting his federal income tax returns for 1992 through 1996, on the grounds that they were not relevant and that their probative value was outweighed by their prejudicial effect. The tax returns indicate that Greathouse failed to report the substantial income he obtained from selling fuel to Gaston Brothers from 1992 through 1995. In 1996, after charges were filed in this case, Greathouse did report additional income in an amount almost identical to that paid to him by Gaston Brothers for fuel. The State argued that this evidence was relevant to show that Greathouse knew the fuel was stolen and that he had the intent to deprive the owner of its value. Greathouse conceded that the evidence was relevant, but argued that it was more prejudicial than probative. The trial court admitted the evidence, finding that the parties did not dispute relevance, and that the evidence did shed light on Greathouse's criminal intent.

Greathouse moved for reconsideration of the ruling before the State introduced the tax returns at trial. This time, Greathouse argued that the tax returns were not relevant to the theft and trafficking charges, that they were more prejudicial than probative, and that they were inadmissible as evidence of other crimes or bad acts under ER 404(b)—because the returns showed Greathouse to be a bad person for failing to report income and pay taxes. The court adhered to its earlier ruling, noting that the tax returns did not contain anything prejudicial on any collateral matters.

 Evidence must be relevant to be admissible. ER 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401; *State v. Kwan Fai Mak*, 105 Wn.2d 692, 703, 718 P.2d 407 (1986). Relevant evidence may be excluded if its probative value is outweighed by its prejudicial effect. ER 403. A trial court's determination in balancing the probative value of evidence against its prejudicial impact is reviewed for abuse of discretion. *State v. Norlin*, 134 Wn.2d 570, 584, 951 P.2d 1131 (1998). In determining whether to admit evidence of other crimes or misconduct, the evidence must be logically relevant to a material issue before the jury, and the probative value must outweigh the prejudicial effect. *State v. Kelly*, 102 Wn.2d 188, 198, 685 P.2d 564 (1984). The trial court's decision to admit or exclude evidence of other crimes or acts is reviewed for abuse of discretion. *Id.* at 203.

 The trial court did not err in admitting the tax returns. In this circumstantial case, Greathouse's concealment of the payments for the fuel he sold to Gaston Brothers in his tax returns for 1992 through 1995 was relevant to show his knowledge that he did not have permission to obtain or sell the fuel. While Greathouse did report all but about $200 of the extra income in 1996, after the charges were filed in this case, the tax return suggests that Greathouse paid nothing or nearly nothing, in terms of deductible overhead expenses for the 58,000 gallons of fuel

he sold to Gaston Brothers in 1996—which is relevant to the issue of whether the fuel was stolen. Moreover, the prejudicial impact was slight. Although evidence of tax evasion could be seen as an indication of dishonest character, this is of little consequence because Greathouse had already admitted that he had not paid taxes on the additional income from Gaston Brothers. And the tax returns did not raise any collateral prejudicial issues, such as income from gambling or some other source that some jurors might find disturbing.

6. Penalty for Evading Special Fuel Tax

On September 15, 1999, the State charged Greathouse with evading the special fuel tax in violation of RCW 82-.38.270, 82.38.030, and 82.38.020 from January 1992 through December 1996. In accordance with RCW 82-.38.270(2)(b),[4] the prosecutor requested that the court impose a penalty of $38,640 for 100 percent of the amount evaded. Greathouse agreed at sentencing that this was the correct amount.

Greathouse now argues that he cannot be made to pay the penalty for any period barred by the five-year statute of limitations applicable to this crime, that is, for the period from January 6, 1992 through September 15, 1994, the information having been filed on September 15, 1999.[5]

■■ The State argues first that we should not address the merits of Greathouse's claim because he fails to show a manifest error affecting a constitutional right which can be raised for the first time on appeal. RAP 2.5(a)(3). However, "it has become well established that a party may raise for the first time on appeal a challenge to a sentence on the basis that it is contrary to law." *State v. Armstrong*, 91 Wn. App. 635, 638, 959 P.2d 1128 (1998). The trial court's authority to impose restitution or penalties is purely statu-

---

[4] RCW 82.38.270(2)(b) provides that the court shall order a person found guilty of evading the special fuel tax to "[p]ay a penalty of one hundred percent of the tax evaded, to the multimodal transportation account of the state."

[5] RCW 9A.04.080(1)(e) establishes a five-year statute of limitations for any class C felony under chapter 82.38 RCW.

tory. *State v. Moen*, 129 Wn.2d 535, 919 P.2d 69 (1996). Greathouse's challenge is based on his claim that the amount of the imposed penalty was contrary to law because the trial court lacked the statutory authority to impose penalties outside the period covered by the statute of limitations. Therefore, Greathouse may challenge the amount of this penalty for the first time on appeal.

▮▮ Greathouse relies on *United States v. Silkowski*, 32 F.3d 682, 687 (2d Cir. 1994), for the proposition that a trial court may not order restitution for offenses as to which the prosecution is barred by the statute of limitations. However, *Silkowski* is readily distinguishable from this case. In *Silkowski*, the defendant pleaded guilty to an information charging one count of embezzlement in violation of 18 U.S.C. § 641. *Id.* at 685. The government conceded that it did not charge a continuing offense pursuant to which the defendant could have been prosecuted for conduct predating the statute of limitations. *Id.* at 689-90. Because applicable federal case law limited the amount of loss for restitution to "losses directly attributable to conduct underlying the offense of conviction," the court held that the statute of limitations applied to the calculation of the amount of loss for purposes of restitution. *Id.* at 690. In contrast, the information in this case clearly indicates that the State charged Greathouse with a continuing offense when it charged him with evading a special fuel tax.[6] Therefore, *Silkowski* does not support Greathouse's argument.

As the State points out, when a continuing crime is charged, the crime is not completed, and the statute of limitations does not begin to run until the continuing criminal impulse has been terminated. *State v. Carrier*, 36 Wn. App. 755, 758, 677 P.2d 768 (1984); *State v. Mermis*, 105 Wn. App. 738, 745, 20 P.3d 1044 (2001). Notably,

---

[6] "That the defendants, MICHAEL E. GREATHOUSE . . . pursuant to a common scheme or plan, a continuing course of conduct and a continuing criminal impulse, did evade . . . a special fuel tax imposed by RCW 82.38.030[.]" Clerk's Papers at 44.

Greathouse does not contend that his conviction for evading a special fuel tax requires dismissal based on charging outside the statute of limitations. Nor does he challenge the State's contention that the crime was not complete until the continuing criminal impulse terminated. Because this was a continuous crime, properly charged within the applicable five-year statute of limitations, the trial court did not err in imposing a penalty of 100 percent of the evaded amount, as required by statute.

## CONCLUSION

We reverse Greathouse's conviction for 14 counts of trafficking in stolen property and remand for dismissal of those counts because the Legislature's attempted repeal of the termination provision of the Criminal Profiteering Act was unconstitutional, and the crime of trafficking in stolen property ceased to exist before the State charged Greathouse in this case.

We affirm Greathouse's conviction for 14 counts of theft. The information passes constitutional muster because it contains the essential elements of theft by embezzlement, and Greathouse has not shown that he was actually prejudiced by the State's failure to name the owner of the embezzled property in the information. The verdict on these counts is supported by substantial evidence, even though Dennis Petroleum ultimately suffered no financial loss by reason of the thefts by embezzlement. There was no impermissible aggregation, and no need for a unanimity instruction, in that the State charged a single act of theft by embezzlement in each count. The tax returns were properly admitted as more probative than prejudicial.

The penalty for evading a special fuel tax was proper.

Affirmed in part, reversed in part, and remanded for dismissal of the 14 counts of trafficking in stolen property.

Cox, A.C.J., and AGID, J., concur.

Reconsideration denied October 25, 2002.

Review denied at 149 Wn.2d 1014 (2003).