FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2016 SEP 33 AM 8: 48



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73756-2-1 |
| Respondent, | ) ) ) | DIVISION ONE |
| v. | ) ) | |
| PHUONG VAN NGUYEN, | ) ) | UNPUBLISHED OPINION |
| Appellant. | ) ) ) | FILED: October 3, 2016 |

BECKER, J. — Phuong Van Nguyen appeals his conviction for one count of first degree trafficking in fish, shellfish, or wildlife, claiming he was deprived of his right to a unanimous jury. We agree and reverse.

## FACTS

Nguyen was charged with one count of first degree trafficking based upon three separate incidents occurring between January 4, 2013, and August 3, 2013. RCW 77.15.260(2). At trial, two witnesses testified on behalf of the State.

Julie Cook, an investigator with the Washington Department of Fish and Wildlife, testified as to the regulatory requirements for the commercial sale of Dungeness crab, including the requirement that a purchaser be a licensed wholesale dealer. Cook testified that along with Detective Chris Clemenson,[1] she contacted Nguyen in January 2013 about purchasing some crab.

---

[1]Clemenson is alternatively spelled as "Clementson" in the record.

Clemenson was unavailable by the time of trial, and Cook could only testify as to what she observed on January 4, 2013; she was prohibited from suggesting what happened outside of her presence.

Clemenson and Cook arrived at the back alley of Diamond Nails salon, which was owned by Nguyen. Clemenson telephoned Nguyen, who met them in the back alley. Clemenson unloaded a garbage can containing 88 Dungeness crabs, and he and Nguyen carried them in through the back door of the salon.

Cook stayed in the car, playing the role of Clemenson's wife or girlfriend, so she could do future transactions by herself. When Clemenson and Nguyen emerged, Nguyen tried to grab a second garbage can of crabs, but Clemenson told him those crabs were for another customer. Nguyen asked Clemenson if he could get more crab. Cook did not see Nguyen give Clemenson any money, but Clemenson handed her $140.00. Cook testified that assuming the payment was for the crab, it would amount to a price of $2.00 per crab with rounding down because some of the crabs were small and others had died in transit.

In 2013, the wholesale price for crab was between $3.50 and $6.00 per pound. Each crab weighs between 1.5 to 2 pounds, and thus, the wholesale price of 60 crabs weighing 1.5 pounds each, even at the low point of $3.50 per pound, would be $315.00.

Cook testified that a purchase of this size requires the buyer to be a licensed wholesale dealer and Nguyen did not have such a license. Nguyen's purchase was not authorized by the Department of Fish and Wildlife.

On March 29, 2013, Cook called Nguyen, reminded him that she had been with Clemenson, and asked if he wanted to buy more crab. Nguyen had to check with a friend, but called back about 20 minutes later and told Cook to bring the crab to Diamond Nails. Cook met Nguyen in the back alley of Diamond Nails with about 70 crabs, and she and Nguyen took them in through the back door of the salon. Nguyen asked about Clemenson, and Cook said he had gotten into trouble for selling crab. When Nguyen asked if she was Clemenson's wife, she said she was his girlfriend.

Cook told Nguyen that it was illegal to sell crab and not to say anything because she did not want to get in trouble. Nguyen said he did not know it was illegal, but he did not care. He told Cook he bought from Native Americans all the time and that Chris is Native American. Nguyen paid Cook $120.00 in cash, $2.00 per crab, but for only 60 crabs because some were small or dead.

Cook contacted Nguyen again on August 3, 2013, and Nguyen called her back and said he wanted to buy crab. Cook brought 84 crabs to Diamond Nails. She videotaped this transaction with Nguyen. The crabs were in a cooler and weighed over 100 pounds. Cook agreed to leave the cooler for Nguyen to return the next time Cook came to sell him crab. Nguyen paid Cook $160 in cash for the crab. Nguyen called Cook three times after the August transaction seeking to buy more crab, but she never spoke to him and never sold him more crab.

John Ludwig, a Department Fish and Wildlife enforcement officer, testified as to his interview with Nguyen on January 7, 2014. After advising Nguyen of his

3

Miranda[2] rights, Nguyen told Ludwig that he had purchased crab from Chris[3] and then admitted he bought 45 crabs from "Jack" but did not get a receipt.

Nguyen told Ludwig these were his only purchases, but when Ludwig asked him if he had purchased crabs from Chris' wife, he admitted making two purchases from her. He said he started buying crabs in 2012 and bought them five times. Nguyen told Ludwig that neither Chris nor Cook ever told him that purchasing crab was illegal and Chris had told him it was legal because Chris was Native American. Ludwig informed Nguyen of the legal requirements for purchasing crabs from tribal members.

Ludwig testified that he had no trouble understanding Nguyen, and they had an intelligent conversation. On cross-examination, Ludwig admitted that Nguyen had told him that he did not understand his rights, and in response, Ludwig just reread the statements he had already read to Nguyen from the standard form.

Nguyen testified on his own behalf through an interpreter. He had emigrated from Vietnam about 16 years earlier, but did not speak English until arriving and was only able to write a few English words. He said that there were no limitations on buying crab in Vietnam. He testified that he believed his purchases were legal because he bought from Native Americans, Clemenson had reassured him that his purchases were legal, and Cook never told him that it was illegal to buy crabs. Specifically, he stated that these people "said that they

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[3] Nguyen often called Clemenson "Chris" during his testimony.

were Native Americans, and they said that they had the right to—to catch all different kinds [of seafood], and they gave me their telephone number and said if I needed it, to call them, not to get it anywhere else." He said that he never would have bought the crab had he known it was illegal.

Nguyen also testified that Cook had told him she was Chris' wife, that he had bought crab a lot of times, including twice from Cook, and that he and Cook had made appointments for other times when she did not come. He denied buying crab from Cook and Clemenson on January 4, 2013, but admitted buying from Cook "and the other man as well" on March 29, 2013. On cross-examination, he admitted buying crabs from a man named Jack.

Nguyen said that he and Cook used everyday words when speaking about the crabs. Cook testified in rebuttal that her conversations with Nguyen involved more than everyday words; they spoke about where Chris was, that Chris got in trouble for the crabs, and that Cook said she was Chris' girlfriend, not his wife. She testified that Nguyen had called her once to tell her he had paid too much money. She also said she had never agreed to meet him without showing up. She denied telling Nguyen that she was Native American.

The jury was instructed on entrapment and the defense's burden to establish it by a preponderance of the evidence. The jury convicted Nguyen as charged. He appeals.

## ANALYSIS

Nguyen contends that because the State was charging and prosecuting him for one count of trafficking based on three separate and distinct incidents,

5

the trial court erred in failing to instruct the jury on the need to be unanimous. We agree.

"Criminal defendants in Washington have a right to a unanimous jury verdict." State v. Ortega-Martinez, 124 Wn.2d 702, 707, 881 P.2d 231 (1994). When the State presents evidence of several acts, any one of which is allegedly sufficient to constitute the crime charged, the jury must unanimously agree on which act constituted the crime. State v. Kitchen, 110 Wn.2d 403, 411, 756 P.2d 105 (1988). To ensure a uniform verdict when the State introduces evidence of multiple acts, the State must elect the act it is relying on for the conviction or the trial court must instruct the jury that it must unanimously agree that the State proved one particular act beyond a reasonable doubt. Kitchen, 110 Wn.2d at 411. The absence of either an election or instruction constitutes a constitutional error because it is possible that all of the jurors did not rely on the same criminal act when convicting the defendant, "resulting in a lack of unanimity on all elements necessary for a conviction." State v. Greathouse, 113 Wn. App. 889, 916, 56 P.3d 569 (2002), review denied, 149 Wn.2d 1014 (2003).

Nguyen did not propose a unanimity instruction at trial, but he may raise a uniformity challenge for the first time on appeal because it concerns an alleged manifest constitutional error. State v. Bobenhouse, 166 Wn.2d 881, 892 n.4, 214 P.3d 907 (2009). The jury was instructed that in order to convict Nguyen of first degree unlawful trafficking in fish, shellfish, or wildlife, the following elements of

the crime had to be proven beyond a reasonable doubt:

> (1) That on or between January 4, 2013 and August 3, 2013, the defendant trafficked in shellfish; and
> (2) The fish is classified as shellfish; and
> (3) The trafficking is not authorized by statute or rule of the department; and
> (4) The shellfish had a value of two hundred fifty dollars or more; and
> (5) That any of these acts occurred in the State of Washington.

The jury was not instructed that it had to be unanimous as to any particular incident or transaction. See State v. Moultrie, 143 Wn. App. 387, 394, 177 P.3d 776 (stating that a unanimity instruction is adequate if "the ordinary juror would interpret it to mean that the jury must be unanimous on the act underlying the conviction"), review denied, 164 Wn.2d 1035 (2008). To the contrary, the State urged the jurors to consider all three incidents when assessing Nguyen's guilt. In light of the State's failure to make an election and the trial court's failure to instruct the jury that it must unanimously agree as to which act constituted the crime, a constitutional error arose because not all of the jurors may have relied on the same criminal act to convict Nguyen. See Greathouse, 113 Wn. App. at 916.

The State argues that its failure to make an election and the lack of a unanimity instruction does not warrant reversal because it was harmless error. We disagree. The error is not harmless if a rational trier of fact could have a reasonable doubt "'as to whether *each incident* established the crime beyond a reasonable doubt.'" Kitchen, 110 Wn.2d at 411 (emphasis added), quoting State v. Loehner, 42 Wn. App. 408, 411, 711 P.2d 377 (1985) (Scholfield, A.C.J., concurring).

7

We are unpersuaded that each incident established the crime beyond a reasonable doubt because the evidence supporting the January 4, 2013, incident is significantly different, and weaker, than the evidence supporting the other two incidents. Nguyen denied making the purchase on January 4, 2013, there was no evidence as to the conversation between Clemenson and Nguyen when they were inside, and Cook did not see the money change hands.

The State relies on Nguyen's response when he was asked about the March 29, 2013, purchase and testified, "I think on that day there was [Cook] and the other man as well." The State claims Nguyen must have been confused about the dates because January 4, 2013, was the only day Cook was accompanied by a man, so Nguyen must have purchased from Clemenson on that day. However, a reasonable juror could disbelieve the State's explanation that Nguyen was merely confused about the dates. Moreover, although the State claims that Nguyen admitted the January 4, 2013, purchase when speaking to Ludwig, the record shows only that Nguyen admitted buying from Chris at some point, but not on this date. A reasonable juror could have had a reasonable doubt as to whether Nguyen purchased the crab on January 4, 2013.

Even if a reasonable juror could not have a reasonable doubt that the January 4, 2013, incident supported the crime beyond a reasonable doubt, there was additional evidence that could lead a reasonable juror to believe that the January 4, 2013, purchase was a result of entrapment. See 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 18.05, at 280 (3d ed. 2008) (entrapment is a defense "if the criminal design originated in the mind

of law enforcement officials . . . and the defendant was lured or induced to commit a crime [he] had not otherwise intended to commit").

Nguyen testified that Chris told him that he was a Native American and that purchasing the crab was legal and he never would have broken the law had he known the sale was illegal. In closing, the State noted that "regardless of Chris's status, *Detective Cook* said, no, it's illegal," but despite what Cook said, Nguyen may have believed his purchase from Clemenson was legal before he was informed differently by Cook on March 29, 2013. (Emphasis added.) Accordingly, even if the evidence established that Nguyen made a purchase on January 4, 2013, a juror could reasonably find that he was entrapped into doing so.

Accordingly, the State has failed to meet its burden to prove harmless error because a "rational trier of fact could have entertained a reasonable doubt" that Nguyen was guilty of first degree seafood trafficking on January 4, 2013. State v. Crane, 116 Wn.2d 315, 325, 804 P.2d 10, cert. denied, 501 U.S. 1237 (1991).

Finally, the State argues that unanimity is not required because the trafficking statute provides for aggregation. Nguyen was prosecuted pursuant to former RCW 77.15.260 (2012), which provides in part:

> (1) A person is guilty of unlawful trafficking in fish, shellfish, or wildlife in the second degree if the person traffics in fish, shellfish, or wildlife with a wholesale value of less than two hundred fifty dollars and:
>     (a) The fish or wildlife is classified as game, food fish, shellfish, game fish, or protected wildlife and the trafficking is not authorized by statute or department rule; or

9

(b) The fish, shellfish, or wildlife is unclassified and the trafficking violates any department rule.

(2)(a) A person is guilty of unlawful trafficking in fish, shellfish, or wildlife in the first degree if the person commits the act described by subsection (1) of this section and:

(i) The fish, shellfish, or wildlife has *a value of two hundred fifty dollars or more* . . .

. . . .

*(b) For purposes of this subsection (2), whenever any series of transactions that constitute unlawful trafficking would, when considered separately, constitute unlawful trafficking in the second degree due to the value of the fish, [or] shellfish, . . . and the series of transactions are part of a common scheme or plan, then the transactions may be aggregated in one count and the sum of the value of all the transactions considered when determining the degree of unlawful trafficking involved.*

(Emphasis added.)

When interpreting a statute that is plain on its face, we will "'give effect to that plain meaning.'" State v. Ervin, 169 Wn.2d 815, 820, 239 P.3d 354 (2010) (internal quotation marks omitted), quoting State v. Jacobs, 154 Wn.2d 596, 600, 115 P.3d 281 (2005). The aggregation language in section 2(b) does not negate the need for unanimity because the plain meaning of that provision indicates only that if a number of transactions of less than $250 are proven, they may be aggregated to constitute one count of first degree trafficking—over $250. Here, the State prosecuted Nguyen for one count of first degree trafficking based on three incidents, each of which, if proved, met the $250 threshold. Thus, the jury could convict Nguyen of first degree trafficking based on *any* of the three incidents, not *all* of them, and the aggregation provision does not negate the need for unanimity.

We reverse Nguyen's conviction and remand for a new trial.

WE CONCUR:

Becker, J.

Dwyer, J.

Appelwick, J.